**CHRIST GATZONIS ELECTRICAL CONTRACTOR, INC., Evangelos Gatzonis and Dina Gatzonis, Plaintiffs–Appellants,**

v.

**NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY, Barry E. Light, and Alan Marinoff, Defendants–Appellees.**

No. 1024, Docket 93–9017.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1994.

Decided April 26, 1994.

Gatzonis Electric commenced an action pursuant to 42 U.S.C. § 1983 claiming that the SCA's failure to make payments promptly for work done on contracts other than the March 17 contract constitutes a deprivation of property without procedural or substantive due process. The United States District Court for the Eastern District of New York (Sifton, *J.*) dismissed the complaint for failure to state a claim, holding that, even if Gatzonis Electric had a constitutionally protected property interest in prompt payment, the SCA afforded Gatzonis Electric all the process it was due under the Fourteenth Amendment.

Without reaching the issue that was dispositive in the district court, we affirm on the threshold ground that Gatzonis Electric has no property interest in the prompt payment of monies allegedly due under the various SCA contracts.

## BACKGROUND

The SCA, a public benefit corporation established pursuant to Public Authorities Law §§ 1727 *et seq.*, employs private contractors to carry out construction and repair work at educational facilities in New York City.

The contractors are selected through a stringent bid process designed in part to counteract corruption in New York's construction industry. Under a system called "prequalification," the SCA accepts bids only from those contractors satisfying established criteria concerning experience, past performance, and "financial capability, responsibility and reliability". N.Y.Pub.Auth.Law § 1734(3)(b) (McKinney's Supp.1993). Contractors deemed to lack sufficient business integrity are precluded from bidding on SCA projects.

Gatzonis Electric is an electrical contractor which has obtained roughly thirty contracts with the SCA through the bid process. Evangelos Gatzonis is the owner and president of Gatzonis Electric; and plaintiff-appellant Dina Gatzonis (his wife) is a co-signatory on Gatzonis Electric's bonding indemnification agreements executed on all SCA contracts.

Carter G. Phillips, New York City (Sidley & Austin, New York City, of counsel), for plaintiffs-appellants.

George Gutwirth, New York City (O. Peter Sherwood, Corp. Counsel of the City of New York, of counsel, Francis Caputo, Marilyn Schechter, on the brief), for defendants-appellees.

Before: WINTER, WALKER and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

The New York City School Construction Authority (the "SCA") has suspended all payments under nearly thirty contracts for work completed or substantially completed by plaintiff-appellant Christ Gatzonis Electrical Contractor, Inc. ("Gatzonis Electric"). The SCA took that action immediately after plaintiff-appellant Evangelos Gatzonis, the president of Gatzonis Electric, was arrested on charges of bribing an SCA official in a bid rigging scheme to secure a contract for his company. The bribery allegedly achieved the award of a single contract executed on March 17, 1992.

On or about April 20, 1993, Evangelos Gatzonis was arrested on charges of bid-rigging and bribery in connection with a contract executed between Gatzonis Electric and the SCA on March 17, 1992 (the "March 17 contract"). According to the criminal complaint, a scheme was devised in February of 1992 whereby a Gatzonis Electric official paid an SCA employee $4,000 to manipulate the bid process in favor of Gatzonis Electric. The SCA employee agreed to open Gatzonis Electric's bid last, and to alter the Gatzonis Electric bid to closely undercut the lowest bidder. At the time of this appeal, the criminal charges were still pending.

On the day the criminal charges were announced, the SCA sent a letter offering Evangelos Gatzonis an opportunity "to dispute whether in fact there are pending criminal charges" or to present "any additional information." Evangelos Gatzonis let that opportunity pass. Three days later, on April 23, 1993, school custodians acting under the direction of the SCA barred Gatzonis Electric from entering job sites to perform contract work. On April 27, 1993, the SCA began sending faxed notices ordering Gatzonis Electric "to discontinue all activities" on each of the uncompleted SCA projects. Thereafter, the SCA has refused to honor any of the payment requisitions submitted by Gatzonis Electric.

Gatzonis Electric immediately requested a meeting to discuss the status of its outstanding contracts and the payment of funds for work performed under them. By letter dated May 18, 1993, the SCA declined to meet, curtly advising that "the Authority will contact you if it considers a meeting warranted." The SCA never contacted Gatzonis Electric.

On June 1, 1993, Gatzonis Electric commenced an action in the United States District Court for the Eastern District of New York (Sifton, J.), seeking a preliminary injunction enjoining the SCA from withholding payments. The complaint, as amended June 18, 1993, claims that Gatzonis Electric is entitled to the prompt payment of $1,325,-375.93 for work completed or partially completed under 27 different SCA contracts; there is no claim for money due on the March 17 contract that gave rise to the crim-

inal charges. Gatzonis Electric calculates the amount due and owing as follows: (i) $484,088.56 for previously approved progress payments; (ii) $487,225.76 for substantially complete or completed projects; and (iii) $354,061.61 for work that is in the "process of billing." Gatzonis Electric argues that, because it has a constitutionally protected property interest in these funds, the SCA's nonpayment constitutes a deprivation of property without procedural or substantive due process, in violation of 42 U.S.C. § 1983. There is no claim for breach of contract.

In the district court, the SCA asserted that plaintiffs' claims are exaggerated and that in fact the SCA owes nothing net of its demands against Gatzonis Electric. As to three of the contracts, the SCA argues that Gatzonis Electric is the subcontractor and therefore must seek payment from the primary contractor, not the SCA. As to a number of other contracts, the SCA contends that the work has not been substantially completed; and as to contracts on which work has been substantially completed, the SCA asserts the right to withhold four times the value of uncompleted tasks. The SCA contests Gatzonis Electric's claim that $484,-088.56 in progress payments has been approved, asserting that the amount does not exceed $176,137. The SCA also asserts that the March 17 contract and the four other contracts entered into after the bid-rigging scheme began in February 1992 were fraudulently induced because the SCA would have disqualified Gatzonis Electric from bidding on any contracts had it known of the corruption. Since the SCA claims that it has rescinded the five post-February 1992 contracts, it asserts that Gatzonis Electric owes restitution to the SCA for the $2,442,313 already paid out on these contracts.

On July 2, 1993, the district court denied Gatzonis Electric's motion for a preliminary injunction, finding that (i) Gatzonis Electric failed to make a sufficient showing of irreparable harm, and (ii) even if Gatzonis Electric had made such a showing, it failed to demonstrate a likelihood of success on the merits in respect of its § 1983 claim. In particular, the district court found that Gatzonis Electric and the other plaintiffs had not shown "a

substantial likelihood of prevailing on their claim that the contractual rights at issue here arise to the level of a constitutionally protected property interest." Then, on September 17, 1993, the district court granted the SCA's motion to dismiss the complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). Assuming that Gatzonis Electric was actually owed money under the SCA contracts *and* that such a contractual entitlement amounted to a constitutionally protected property interest, the district court ruled nevertheless that Gatzonis Electric was denied neither procedural nor substantive due process.

Gatzonis Electric appeals.

## DISCUSSION

■ We review *de novo* the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *In re Ames Dep't Stores Inc. Stock Litigation*, 991 F.2d 953, 963 (2d Cir.1993). Such a dismissal is warranted only where plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Id.*

Gatzonis Electric argues that the SCA's refusal to pay promptly the amounts owed under the various SCA contracts constitutes a deprivation of property without due process of law. That claim fails because Gatzonis Electric cannot establish a constitutionally protected property interest in prompt payment under the SCA contracts.[1] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The critical inquiry under *Roth* is whether Gatzonis Electric's contractual relationships with the SCA create a "legitimate

claim of entitlement" to prompt payment and thus a constitutionally protected property interest.

■ "It is well established that a contractor has a right to timely payment for work it performs under a contract with a state agency, and that such right is a property interest protected by the due process clause." *General Elec. v. New York State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir.1991). This property interest, however, arises only where there exists "a contractual or state law entitlement to prompt payment." *S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 970 (2d Cir.1988). Gatzonis Electric argues that its alleged property interest can be predicated upon either the SCA contracts or New York statutory law.

### A. Contractual Entitlement

■ All of Gatzonis Electric's contracts with the SCA contain the same General Conditions, § 9.02 of which provides that upon a termination for convenience or necessity,[2] "[t]he Authority shall pay the contractor the costs actually incurred by the Contractor up to the effective date of such termination...." Gatzonis Electric asserts that its contracts were terminated for convenience on April 27, 1993 and therefore argues that § 9.02 gives rise to a property interest in the prompt payment of all costs incurred up to that date.

Gatzonis Electric's argument ignores § 16.01, which expressly reserves to the SCA the "right to approve only those cost distributions which, in the [SCA's] opinion, are reasonable, equitably balanced and correspond to the quantities in the Contract Documents." Moreover, upon substantial completion by the contractor, the SCA "shall pay to the Contractor the balance due ... less ... an amount necessary to satisfy any and all claims ... against the Contractor." This

---

1. We have no occasion to consider whether or not state court remedies would suffice to provide the requisite due process if a constitutionally protected property interest was involved. This issue was expressly left open in *S & D Maintenance Co. Inc. v. Goldin*, 844 F.2d 962, 966 (2d Cir.1988) ("[E]ven if all public contract rights warranted the procedural protections of due process, there would be a substantial argument that in most circumstances post-deprivation state court remedies would provide all the process that is due.").

2. A termination for convenience or necessity occurs "(a) if the Work is discontinued, cancelled or terminated for any reason, or (b) when the Authority otherwise deems it to be in its best interest."

power of set-off in the General Conditions of the SCA contracts affords the SCA substantial latitude in approving and making payments. Since that contractual grant of discretion is the stated ground for the SCA's withholding of payments, the contracts cannot be said to confer upon Gatzonis Electric an entitlement to prompt payment. *See S & D Maintenance,* 844 F.2d at 969.

The municipality in *S & D Maintenance* withheld payments pending the resolution of a criminal investigation into the means by which its contractor obtained one of the municipal contracts. In its due process claim, the contractor alleged that it had a protected property interest in prompt payment arising from the municipal contract itself, which provided that the municipal official had fifteen days to review the contractor's requisitions and order final payment "less any and all deductions authorized to be made by the Comptroller under the terms of this contract or by law." *Id.* at 968. We found no clear entitlement to prompt payment because the contract vested the municipal official with the discretion to withhold interim payments. *Id.* at 969. The SCA contracts confer similar discretion upon its officials, and we therefore conclude that the SCA contracts give Gatzonis Electric no "legitimate claim of entitlement" to funds allegedly due.

Even if the SCA contracts could be read to mandate payment to Gatzonis Electric, they do not furnish a basis for finding a property interest in *prompt* payment. As the district court noted, at best "the general conditions of the SCA contracts support Gatzonis Electric's claim to the amounts allegedly owed, but not to any 'prompt payment' thereof." Section 9.02, upon which Gatzonis Electric relies, imposes no time constraints upon the SCA in making payments.

### B. State Law Entitlement

■ Gatzonis Electric invokes state law as an alternative source of its alleged property right in prompt payment. General Municipal Law § 106–b, which governs contracts with the SCA, provides in pertinent part: "The public owner shall in accordance with the terms of the contract *approve and promptly pay* the requisition for the progress payment less an amount necessary to satisfy any claims, liens or judgments against the contractor which have not been suitably discharged...." N.Y.Gen.Mun.Law § 106–b(1)(a) (McKinney's Supp.1993) (emphasis added). The phrase " 'promptly pay' shall mean payment within forty-five days ... of receipt of the requisition unless such requisition is not approvable in accordance with the terms of the contract." *Id.* According to Gatzonis Electric, § 106–b confers upon the contractor a clear entitlement to the prompt payment of all requisitions submitted pursuant to SCA contracts.

Section 106–b obligates the SCA to promptly pay requisitions for progress payments (or, where the project is substantially completed, for the balance of the contract less designated deductions) only if those requisitions have been approved. Where a requisition is "not approvable in accordance with the terms of the contract", there is no duty to make prompt payment on that requisition. *Id.* The 45–day requirement of § 106–b is therefore at most applicable only to those Gatzonis Electric requisitions that have been approved by the SCA.

■ The SCA approved $176,137 in progress payments. Accordingly, if § 106–b gives rise to any property interest in prompt payment, it is for only that amount. However, New York law provides that "where work is done pursuant to an illegal municipal contract, no recovery may be had by the vendor, either on the contract or in *quantum meruit*." *S.T. Grand, Inc. v. City of New York,* 32 N.Y.2d 300, 305, 344 N.Y.S.2d 938, 942, 298 N.E.2d 105, 108 (1973) (citations omitted). From this it follows that "[a] public contractor has no property interest, grounded in New York law, to prompt payment pending an investigation when the result of that very investigation will determine whether the City tenders payment or declares the contract void, at least where the delay does not exceed the reasonable delay contemplated by New York law." *S & D Maintenance,* 844 F.2d at 969. Therefore, Gatzonis. Electric has no property interest in prompt payment under any of the SCA contracts, § 106–b notwithstanding.

Evangelos Gatzonis, the president of Gatzonis Electric, currently faces federal prosecution on charges of bribery and bid-rigging in connection with the March 17 contract. On the basis of those charges, the SCA asserts a right to rescind the five contracts executed subsequent to the date in February 1992 when the bid-rigging scheme was allegedly devised. The results of the federal prosecution and the contractual dispute will determine not only whether the SCA tenders payment to Gatzonis Electric, but also whether the SCA is entitled to restitution of payments made on the five contracts awarded after February 1992, an amount that exceeds the $176,137 in approved payments.

Gatzonis Electric argues that the SCA's claim for restitution of funds paid on the five post-February 1992 contracts does not justify withholding payment under the other contracts because the only statutorily permissible offset to an approved progress payment is "an amount necessary to satisfy any claims, liens or judgments," and because the statute recites that "[a]ny claims, liens and judgments referred to in this section shall pertain to the project and shall be filed in accordance with the terms of the applicable contract and/or applicable laws." N.Y.Gen. Mun.Law § 106–b(1)(a). It is unclear whether this language prohibits the SCA from retaining funds on all contracts as a potential setoff for the SCA's claim of restitution on the five post-February 1992 contracts. For our purposes, it is enough that the SCA has interposed a claim of setoff that may be permissible under the statutory language. From that, we conclude that the state law invoked by Gatzonis Electric is insufficiently clear to constitute the "legitimate claim of entitlement" necessary to create a constitutionally protected property interest. To hold otherwise would "shift the whole of the public law of the states into the federal courts." *S & D Maintenance*, 844 F.2d at 966 (quoting *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir.1983)).

In short, criminal allegations have overwhelmed the contractual relationship between Gatzonis Electric and the SCA, placing in doubt what funds, if any, are owed to Gatzonis Electric, preventing Gatzonis Electric from asserting a clear entitlement to prompt payment, and casting its claim as nothing more than a "contract dispute ... [which] does not give rise to a cause of action under section 1983." *Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir.1987).

## CONCLUSION

Since Gatzonis Electric has no property interest in the prompt payment of monies allegedly owed under the various SCA contracts, we affirm the district court's dismissal of the § 1983 claim.