Eddy Jean PHILIPPEAUX, Plaintiff,

v.

NORTH CENTRAL BRONX HOSPITAL, New York City Health & Hospital Corporation, and The City of New York, Defendants.

No. 94 CIV. 3409 (DLC).

United States District Court,
S.D. New York.

Dec. 19, 1994.

Eddy Jean Philippeaux, pro se.

Paul A. Crotty, Corp. Counsel of City of New York (Paul Marks, Katherine Winningham of counsel), New York City, for defendants.

### OPINION & ORDER

COTE, District Judge:

Plaintiff Eddy Jean Philippeaux brings this action in response to North Central Bronx Hospital's ("Bronx Hospital") failure to hire him as a Senior Storekeeper. In his complaint and amended complaint, plaintiff alleges that, in failing to hire him, Bronx Hospital discriminated against him based on his race, national origin and age, and failed to give him preference as a veteran of the armed forces in violation of state and federal law. As a result of this alleged discrimination, plaintiff seeks recovery in the form of "back

pay, hiring, promotion, compensatory and punitive damages." Plaintiff also sues the New York City Health and Hospital Corporation ("HHC"), and The City of New York ("The City"). The specific causes of action asserted include claims under Title VII, 42 U.S.C. § 2000e–5; the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 631(a); the Veterans' Preference Act of 1944, 38 U.S.C. § 523; 42 U.S.C. §§ 1981, 1983, and 1985; and New York Civil Service Law § 85. In response, defendants have filed a motion to dismiss the complaint in its entirety, or in the alternative to grant summary judgment in defendants' favor. Plaintiff has filed a cross-motion for summary judgment.[1] For the reasons set out below, this Court denies plaintiff's motion for summary judgment and grants in part defendants' motion to dismiss.

## STANDARDS FOR DISMISSAL AND SUMMARY JUDGMENT

■ The Court may dismiss an action pursuant to Rule 12(b)(6), Fed.R.Civ.P., only when plaintiff "can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Christ Gatzonis Electrical Contractor, Inc. v. New York City School Construction Authority*, 23 F.3d 636, 639 (2d Cir.1994). In reviewing a motion to dismiss, the Court must accept as true all allegations in the complaint. *Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir.1994). The Court need not, however, accept as true "naked assertions" without supporting facts. *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir.1994) (quoting *Martin v. New York State Department of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (per curiam)). Only if, assuming all facts as true, plaintiff still fails to plead the basic elements of a cause of action can the Court dismiss the claim.

■ Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. In making this judgment, the burden is on the moving party, and all facts must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In addition, when determining whether to grant summary judgment in discrimination cases in which intent is an issue, the court must exercise extra caution. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994). This extra caution is further warranted in cases such as this one in which there has been only limited document discovery. Finally, this Court must construe a *pro se* complaint more liberally and apply a more flexible standard in determining whether the plaintiff has stated a cause of action. *See Platsky v. C.I.A.*, 953 F.2d 26, 28 (2d Cir.1991). Thus, in determining whether to grant summary judgment, this Court must (i) determine whether a factual dispute exists, and (ii) determine, based on the substantive law at issue, whether the fact in dispute is material.

The statement of facts set forth below is derived primarily from plaintiff's pleadings, the exhibits attached to his complaint, and his affidavit in opposition to the motion to dismiss. Facts asserted by the defendants are so noted. Although it appears that plaintiff may have dropped some of his original causes of action upon filing an amended complaint, the motion to dismiss is addressed to all of plaintiff's causes of action. Therefore, the Court will review all claims asserted in both the complaint and in the amended complaint.

## BACKGROUND

HHC is a "public benefit corporation" created by the State of New York to take control of hospitals formerly under the control of The City. *See* New York Unconsolidated Laws §§ 7381–7406. HHC is controlled by a Board of Directors who are for the most part appointed by the Mayor and

---

1. Defendants have requested that this Court also treat their papers in support of the motion to dismiss as opposition papers to plaintiff's motion for summary judgment or in the alternative as defendants' cross motion for summary judgment. Plaintiff has consented to this request. To conserve the efforts of the parties, the Court has concurred in this request.

the City Counsel. *See id.* § 7384(1). Bronx Hospital is one of several hospitals under the control of HHC. Bronx Hospital is not, however, a legal entity independent of HHC.

In December 1991, Bronx Hospital placed an advertisement in "The Chief," a newspaper that advertises government jobs, giving notice that it had an opening for a Senior Storekeeper. A Senior Storekeeper supervises the receipt of all Bronx Hospital commodities and supplies. Plaintiff responded to the advertisement by sending to Bronx Hospital a resume and supporting documents including plaintiff's military record. Bronx Hospital called plaintiff in for an interview, and in early January 1992, Mr. Paul Brodsky, the Material Supervisor at Bronx Hospital, interviewed plaintiff. Ms. Rosalie Galan, the Materials Manager at Bronx Hospital, interviewed plaintiff on January 23, 1992, at which time plaintiff submitted an employment application.

Bronx Hospital did not offer the position to plaintiff, but re-opened the hiring process, which was originally limited to those who applied by December 16, 1991. On February 13, 1992, Pablo Arroyo, a Food Service Supervisor at Bronx Hospital applied for the position. Mr. Arroyo was interviewed on about February 26, 1992, and was hired on March 4, 1992. Mr. Arroyo is Hispanic and was 34 years old in 1992. On June 1, 1992, plaintiff was informed by Bronx Hospital that they had hired Mr. Arroyo. Plaintiff was 39 years old at that time. Plaintiff filed a claim with the EEOC on August 18, 1992 alleging that Bronx Hospital discriminated against him on the basis of his national origin and race, which he identified as Haitian and Black, respectively. On March 4, 1994, plaintiff received a right to sue letter from the EEOC, and brought this action on April 4, 1994.

To support his allegations of discrimination, plaintiff points to three areas: the difference in qualifications of plaintiff and Mr. Arroyo, the respective races of the persons involved, and the alleged irregularities in the hiring process.

Plaintiff's application to Bronx Hospital lays out, in depth, his qualifications for the Senior Storekeeper position. Plaintiff held a New York State high school equivalency diploma and had credits from two college level programs. From 1972 to 1980, plaintiff worked as a Senior Storekeeper at various Navy bases and aboard various Navy vessels. From 1980 to at least 1983 plaintiff worked as a medical material specialist both at Andrews Air Force Base on a part-time basis and at D.C. General Hospital on a full time basis. From 1983 to 1990, plaintiff worked for the Air Force primarily in aircraft maintenance. Plaintiff does not indicate any further employment after 1990 other than some part-time work for the Metropolitan Museum of Art during the holiday season in 1991. In addition, plaintiff provided certificates of completion from Navy "Storekeeper Class 'A'" training and Air Force "Medical Material Specialist" training, and stated that he attended Electronics and Computer School in Mississippi. In contrast, plaintiff points to Mr. Arroyo's experience as a Food Service Supervisor at Bronx Hospital starting in 1986, and at St. Joseph's Hospital for five years prior to that. Mr. Arroyo's employment application, which plaintiff attached as an exhibit to the complaint, also reflects that he graduated from the Bronx High School of Science and has a B.B.A. degree in computer information systems from Baruch College.

To further support his claim of discrimination, plaintiff points to the race and national origin of the various individuals involved in the hiring process. Plaintiff, who is Black and Haitian, notes that Ms. Galan is Hispanic, Mr. Brodsky is Caucasian, and Mr. Arroyo, the successful candidate, is Hispanic. Plaintiff asserts that Ms. Galan felt she "[could not] select an individual who was not of Hispanic origin."

As the third basis for supporting his claim of discrimination, plaintiff points to irregularities in the hiring process. Plaintiff complains that in both interviews he was given little attention. Mr. Brodsky, according to plaintiff, spent most of the first interview on the telephone and would only ask "intermittent questions between the time he would make another call." Plaintiff's second interview allegedly "lasted no more than five minutes." In addition to the brief interviews, plaintiff points to Bronx Hospital's re-open-

ing the hiring process after the December 16, 1991 cutoff for accepting applications. According to plaintiff, this was done "in violation of the Civil Rights Act of 1964."

## AGE DISCRIMINATION CLAIM

■ In plaintiff's original complaint, he alleges that Bronx Hospital discriminated against him based on his age. Section 631(a) of the ADEA provides that "[t]he prohibitions in this chapter shall be limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a); *see also Petrelli v. City of Mount Vernon,* 9 F.3d 250, 253 (2d Cir.1993). Plaintiff, who was 39 years old at the time of the alleged discriminatory actions by Bronx Hospital, is therefore unable to invoke the protections of the ADEA, and his claim of age discrimination is dismissed with prejudice.

## FEDERAL VETERAN STATUS CLAIM

■ Plaintiff places significant emphasis on his status as a Vietnam era veteran, and asserts that in choosing not to hire him Bronx Hospital disregarded his veteran's status in violation of Section 523 of the Veterans' Preference Act of 1944. This provision provides that

> [t]he Secretary [of Veterans Affairs] shall seek to achieve the effective coordination of the provision ... of benefits and services ... with appropriate programs ... conducted by State and local government agencies and private entities at the State and local level.

38 U.S.C. § 523. When seeking to recover for an alleged violation of a federal statute, there are three possible bases for the cause of action: the statute may provide for an express cause of action such as in Title VII, the statute may create a right that can be enforced through an action under 42 U.S.C. § 1983, *see Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980), or the statute may allow for an implied cause of action, *see Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975). There is no dispute that the Veterans' Preference Act does not provide any express cause of action. Therefore, in order for plaintiff to recover for any violation of this statute, the Court must find that the Act creates a right that is enforceable through Section 1983 or creates an implied cause of action. *See Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

■ A violation of federal law does not *per se* lead to a cause of action under Section 1983. Instead, the statute must meet two conditions. First, the statute must "create enforceable rights, privileges, or immunities within the meaning of § 1983." *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987); *see also Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981). Second, the statute must not evidence a congressional "intent to foreclose resort to § 1983 ... [by providing] a scheme that itself provided for private actions and left no room for additional private remedies under § 1983." *Wright v. Roanoke,* 479 U.S. at 423, 107 S.Ct. at 770; *see also Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981).

■ For the Court to find that a statute creates a right, privilege or immunity enforceable under Section 1983, the statute must create specific rights or regulations that provide notice to the States of the duties Congress is imposing on them. *See Suter v. Artist M.,* 503 U.S. at ——, 112 S.Ct. at 1369 (statute requiring that States make "reasonable efforts" to prevent a child from being removed from his home is not sufficiently specific to create a right enforceable under Section 1983). The provision in the Veterans' Preference Act cited by plaintiff, 38 U.S.C. § 523, is directed at the Secretary of Veterans Affairs, and requires coordination of existing programs. The Act requires that the Secretary assist states in rehabilitation efforts, conduct studies, coordinate and promote programs, publish existing laws, evaluate and collect data, and report to Congress. *See* 38 U.S.C. §§ 521–29. Because the Act fails to impose any duty on the States, much less a duty set forth in specific regulations, a violation of the Act cannot form the basis of a Section 1983 claim.

 Having concluded that the Veterans' Preference Act does not create a right that is enforceable through Section 1983, the Court can quickly dispose of the issue of whether the Act creates an implied cause of action. Under the analysis set forth in *Cort v. Ash*, the Court must determine whether Congress implicitly or explicitly intended to create such a private cause of action. *See* 422 U.S. at 78, 95 S.Ct. at 2087. As discussed above, the statute does no more than require that the Secretary of Veterans Affairs coordinate existing programs. Nowhere in the provisions of the Act does Congress create any rights or impose any specific obligations on the States. Where the statute by its terms grants no private rights and proscribes no conduct, the analysis into whether to imply a private cause of action ends. *See, e.g., Touche Ross & Co. v. Redington*, 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). Thus, plaintiff can neither state a cause of action directly under the Veterans' Preference Act nor indirectly through Section 1983.

 There is one federal law that requires certain employers to give special consideration to Vietnam era veterans in making employment decisions. Section 4212 of Title 38, United States Code, provides that companies entering into contracts to supply the government with $10,000 or more in personal property or services "shall take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era." 38 U.S.C. § 4212(a) (formerly 38 U.S.C. § 2012(a)). It is not clear, however, that this provision would apply to Bronx Hospital.

 Even if the provision does apply to Bronx Hospital, the claim cannot be asserted in this forum. Section 4212(b) sets forth an administrative review scheme through the Secretary of Labor. Because Congress has provided for an administrative review procedure, even if plaintiff could ultimately bring a claim under Section 4212, he must first seek administrative relief. *See Harris v. Adams*, 873 F.2d 929, 932 (6th Cir.1989) (no private

right of action under the Act based on provision for administrative complaint review by the Secretary of Labor); *Barron v. Nightingale Roofing, Inc.*, 842 F.2d 20, 22 (1st Cir. 1988) (only the Secretary of Labor may enforce the Act, thereby precluding veterans from bringing private actions); *Aleszczyk v. Xerox Corp.*, No. CIV. 89–679L, 1990 WL 251849, at \*7 (W.D.N.Y. Feb. 14, 1990) (even if there is a private right of action, it must occur after administrative review), *rev'd on other grounds sub nom. Tolliver v. Xerox*, 918 F.2d 1052 (2d Cir.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).[2] This administrative review also precludes plaintiff from bringing a claim under Section 1983. Where "remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. at 20, 101 S.Ct. at 2626; *see also Brace v. Ohio State University*, 866 F.Supp. 1069, 1074–75 (S.D.Ohio 1994) (no private right of action under Section 4212 or indirectly through Section 1983).

Because plaintiff has no direct cause of action either under 38 U.S.C. § 523 or under 38 U.S.C. § 4212, and because neither of these provisions can be enforced through 42 U.S.C. § 1983, this Court dismisses with prejudice plaintiff's federal law cause of action based on defendants' failure to give preference to plaintiff's veteran status.

## STATE VETERAN STATUS CLAIM

 Plaintiff's pendent state law claim for failure to give him preference as a military veteran must also fail because the New York State statute only provides for preferential treatment to veterans who take competitive examinations for civil service positions. New York State Civil Service Law Section 85(2) provides that:

> On all eligible *lists resulting from competitive examinations*, the names of eligibles shall be entered in the order of their re-

---

**2.** Because plaintiff has not asserted that he has previously sought administrative review pursuant to this provision, it is unnecessary to consider at this time whether a veteran could bring an action in federal court after exhausting the administrative review provided for under the statute.

spective final earned ratings on examination, with the name of the eligible with the highest final earned rating at the head of such list, provided, however, that for the purpose of determining final earned ratings, ...

[s]uch additional credit shall be added to the final earned rating of such disabled or non-disabled veteran, as the case may be, after he or she has qualified in the competitive examination and shall be granted only at the time of establishment of the resulting eligible list.

New York Civil Service Law § 85(2)(a), (b) (emphasis added).[3] Once a veteran takes advantage of this provision, that veteran's name is placed on a roster and the veteran may never again obtain a position or promotion by using the extra credits. *Id.* §§ 85(4), 85(6). These sections and the overall scheme of Section 85 indicate that the statute only applies to civil service positions that are awarded on the basis of graded competitive examinations.

The position of Senior Storekeeper was advertised through the Vacancy Control Board at Bronx Hospital and was a "posted position." As such, it was not subject to the requirements of Section 85 and the procedures mandated by the Civil Service Law. Therefore, plaintiff's claim based on a violation of New York Civil Service Law Section 85 is dismissed with prejudice.

## TITLE VII

The heart of plaintiff's complaint is his Title VII claim. In order to bring a claim under Title VII, the person must first file a complaint with the EEOC and receive either a decision or a right to sue letter. In this case, plaintiff properly brought an action before the EEOC, alleging discrimination based on race and national origin, which then referred the action to the New York State Commission on Human Rights. In his complaint to the EEOC, however, plaintiff named only Bronx Hospital as a defendant.

The City asserts that, because plaintiff failed to name it in the EEOC complaint, the Title VII claim against The City must fail as a matter of law. Although filing a complaint with the EEOC is normally a prerequisite to commencing a Title VII action against a defendant, *see* 42 U.S.C. § 2000e–5(e)(1), courts have recognized an exception to this requirement when the named and unnamed parties have an "identity of interest." *Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991). In determining whether there is such an identity of interest, the Court must consider four factors:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–10 (quoting *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977)).

Applying the factors to this case, I find that the plaintiff may bring a Title VII claim against The City even though The City was not named in the EEOC complaint. The first and fourth factors weigh against the plaintiff. There is no indication that the plaintiff could not have included The City in the original EEOC complaint. Also, there is no indication that The City represented to plaintiff that he should treat Bronx Hospital as its agent.

The second and third factors, however, weigh more strongly in favor of allowing the plaintiff to include The City in the Title VII action. Although plaintiff named only Bronx Hospital in the EEOC complaint, Bronx Hos-

---

**3.** The New York State Constitution, Article V, Section 6 provides the same right for veterans to receive bonus points on civil service exams.

pital is under the direct control of HHC—the employment application is under the name of HHC, not Bronx Hospital. HHC in turn, while not under the direct control of The City, *see Spiegler v. City of New York,* 99 A.D.2d 958, 472 N.Y.S.2d 652, 652–53 (1984), is entitled to legal representation and indemnification from The City for acts performed by HHC employees within the scope of their employment. *See Brennan v. City of New York,* 59 N.Y.2d 791, 464 N.Y.S.2d 731, 732, 451 N.E.2d 478, 479 (1983). In this case, Bronx Hospital, HHC, and The City are all represented by the same counsel. Moreover, HHC was created by the State of New York as a public benefit corporation specifically to take over hospitals previously run by The City. *See* New York Unconsolidated Laws §§ 7381–7406. Under this statute, the Mayor and City Counsel of The City select the board of directors of HHC, *id.* § 7384(1), HHC has the right to use facilities of The City, *id.* § 7385, HHC is paid by The City through tax levies and submits a budget to The City, *id.* § 7386, The City may condemn property for the HHC's benefit, *id.* § 7387, and HHC is subject to regulations promulgated by "the New York city department of personnel and civil services commission," *id.* § 7390. Given this similarity between the interests of Bronx Hospital and The City, it was probably unnecessary to include The City in the EEOC proceedings in order to obtain conciliation or compliance.

Finally, there is no indication that The City was prejudiced by not taking part in the EEOC proceedings. The complaint was forwarded by the EEOC to the New York State Division of Human Rights, which found no probable cause to proceed. Thus, The City could not have obtained a more favorable disposition of the complaint had it been named. In any event, through its obligation to represent Bronx Hospital The City was on notice of the EEOC proceeding.

Turning to the merits of plaintiff's Title VII claim, for the reasons set forth below, defendants' motion to dismiss for failure to state a claim and all parties' motions for summary judgment are denied. Title VII provides in relevant part that:

> It shall be an unlawful employment practice for an employer ... to fail or refuse to hire ... any individual ... because of such individual's race, color, religion, sex or national origin....

42 U.S.C. § 2000e–2(a)(1).

 The first step in evaluating a Title VII claim is to determine whether the plaintiff has stated a prima facie claim of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). In a suit for failure to hire based on disparate treatment, in order to state a prima facie claim, plaintiff must show: "(i) that he belongs to a protected [class]; (ii) that he applied for and was qualified for a job for which the employer was seeking applications; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applications from persons of complaintant's [sic] qualifications." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Plaintiff is Black and Haitian, thus belonging to a protected minority,[4] and there is no question that plaintiff applied for the position at issue and was rejected. Through exhibits attached to his complaint, plaintiff provides extensive documentation regarding his qualifications for the position, and the State Division of Human Rights found in its Determination and Order that "complaintant [sic] possessed the qualifications necessary for the position." Finally, there is no dispute that, after rejecting plaintiff, Bronx Hospital accepted new applications and ultimately hired an Hispanic. Plaintiff has successfully met the "de minimis" burden of asserting a prima facie claim of discrimination. *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). By stating a prima facie case, plaintiff has defeated defendants' motion to dismiss.

---

**4.** Plaintiff's veteran status cannot provide a basis for a Title VII action. *See Heckman v. Executive Branch,* No. 86–CV–132, 1987 WL 6394, at *1 (E.D.N.Y. Feb. 3, 1987) ("Title VII does not encompass claims of discrimination on the basis of veteran status"), *aff'd,* 823 F.2d 544 (2d Cir. 1987).

Once plaintiff has asserted a prima facie case, defendants have the opportunity to rebut that assertion by providing non-discriminatory reasons for the decision. *Texas Department of Community Affairs v. Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. In this action, defendants set forth a number of non-discriminatory considerations in hiring Mr. Arroyo over plaintiff. Although these explanations for hiring Mr. Arroyo over plaintiff were not submitted by affidavit, but were merely asserted in support of defendants' motion to dismiss, this Court will consider them as each is based on documentary evidence supplied by plaintiff as exhibits to the complaint. Rule 12(b), Fed.R.Civ.P. The justifications asserted by defendants include (1) differences in educational levels, Mr. Arroyo having a B.B.A. in computer information systems, while plaintiff only had a GED; (2) differences in work history, Mr. Arroyo having eleven years experience as a food services supervisor, including six years in that position with Bronx Hospital, while plaintiff had for the past two years worked only seasonally as a sales assistant at a museum; and (3) differences in references, Mr. Arroyo having provided as references three current Bronx Hospital employees, while plaintiff failed to provide complete information on his references.

In putting forth legitimate non-discriminatory reasons for not hiring plaintiff, defendants need not prove or even assert that Mr. Arroyo had greater objective qualifications than plaintiff. *Davis v. State University of New York*, 802 F.2d 638, 641 (2d Cir.1986). Defendants merely need to show that the reasons for the decision were not discriminatory. *Id.* Included in possible non-discriminatory reasons for not hiring an objectively more qualified individual is "[a] preference to hire individuals whose work habits and effectiveness are known to the employer." *Aguirre–Molina v. New York State Division of Alcoholism and Alcohol Abuse*, 675 F.Supp. 53, 60 (N.D.N.Y.1987). Thus, defendants' justifications for hiring Mr. Arroyo over plaintiff are sufficient to meet the burden of production required under *McDonnell.* On this basis, defendants have successfully defeated plaintiff's motion for summary judgment on the grounds of a Title VII violation.

Once the defendant puts forth legitimate reasons for not hiring plaintiff, plaintiff must show (i) that the purported reasons are merely pretextual, and (ii) that defendant in fact intentionally discriminated against plaintiff. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). Defendants in this action assert that plaintiff has failed to overcome their legitimate reasons for not hiring plaintiff, and therefore, the Court should grant defendants summary judgment.

In order to avoid summary judgment, plaintiff need not prove that the purported reasons were pretextual, but merely needs to raise an issue of material fact as to this question. The Second Circuit has affirmed the grant of summary judgment for defendants at this stage, even though proving pretext may require consideration of the employer's "intent, motivation, and state of mind." *Dister*, 859 F.2d at 1114. The Second Circuit has, however, also cautioned against granting summary judgment in employment discrimination cases when intent is at issue. Only where the evidence plaintiff puts forth to show pretext is so slight that no reasonable jury could find in plaintiff's favor is it appropriate for the Court to grant summary judgment. *Gallo v. Prudential Residential Services*, 22 F.3d at 1224. Plaintiff has, at this stage, failed to come forward with specific evidence demonstrating that the reasons given by defendants are pretextual. He has, however, alleged that Ms. Galan would hire only an Hispanic applicant. Moreover, because there has been no discovery in this action beyond providing plaintiff with the documents attached to the complaint, it is premature for this Court to find that plaintiff would be unable, after discovery, to find evidence to rebut defendants' asserted legitimate bases for choosing Mr. Arroyo. Therefore, defendants' motion for summary judgment on the Title VII claim is denied.

### 42 U.S.C. SECTION 1983

Among the litany of statutes cited by plaintiff in his complaint, he asserts a claim under Section 1983 of Title 42, United States

Code, based on a violation of his Fourteenth Amendment Rights. Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. There are two distinct parts to a Section 1983 claim: first, whether the plaintiff has alleged that a person acting under color of state law has deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States, *see Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir.1993); and second, whether the various defendants may be held liable for that action based on the requirements of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

▆▆▆▆ Plaintiff has alleged sufficient facts to maintain an action under the first part of the Section 1983 analysis. The defendants do not dispute that Ms. Galan and Mr. Brodsky, who are employees of a public benefit corporation, were acting under the color of state law in hiring Mr. Arroyo over the plaintiff. In addition, plaintiff has alleged violations of Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment. Although a Title VII claim cannot form the basis of a Section 1983 action, *see Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 142–43 (2d Cir.1993); *Carrero v. New York City Housing Authority*, 890 F.2d 569, 575–76 (2d Cir.1989), plaintiff may assert a claim under Section 1983 based on a violation of the Fourteenth Amendment that arises out of the same nucleus of facts. *See Carrero*, 890 F.2d at 575–76; *Sorlucco v. New York City Police Department*, 888 F.2d 4, 6–7 (2d Cir.

1989). In such a case, the Fourteenth Amendment violation is analyzed under the same *McDonnell–Burdine* test used in Title VII actions. *See St. Mary's v. Hicks*, —— U.S. at —— n. 1, 113 S.Ct. at 2747 n. 1; *Sorlucco v. New York City Police Department*, 888 F.2d at 6–7.[5]

▆▆▆ In this case, plaintiff has not asserted claims against the individuals who actually made the hiring decision, but has instead chosen to bring suit against Bronx Hospital, HHC and The City. In such a case, the municipality and its agencies may not be held liable under a respondeat superior theory, but may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. In determining whether specific individuals hold such policymaking authority, the Supreme Court has set fourth a number of guiding principles:

> First, . . . municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered." *Id.* [475 U.S.] at [480, 106 S.Ct. at 1298.] Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability. *Id.* [475 U.S.] at 483 [106 S.Ct. at 1300] (plurality opinion). Third, whether a particular official has "final policymaking authority" is a question of *state law. Ibid.* (plurality opinion). Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business. *Id.* at 482–483, and n. 12 [106 S.Ct. at 1299–1300, and n. 12] (plurality opinion).

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (internal citations to *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).[6]

---

**5.** The relationship between Section 1983 and Section 1981 is discussed below.

**6.** Although the opinion in *Praprotnik* was only a plurality, the Supreme Court's subsequent opinion in *Jett v. Dallas Independent School District*,

Plaintiff does not allege that The City or HHC officially sanctioned the hiring of Mr. Arroyo over the plaintiff, but merely asserts that they "failed to interfere in the protection of plaintiff's Constitutional Rights." Thus, plaintiff has not plead any facts to impose liability upon The City or HHC under *Monell.* Moreover, to hold the defendants liable under Section 1983 the Court must find that under state law Mr. Brodsky, the Material Supervisor at Bronx Hospital, and Ms. Galan, the Medical Material Chief at Bronx Hospital, had final policymaking authority regarding discriminatory practices in hiring HHC employees. There are three means by which individuals can obtain such policymaking authority: (1) by express legislative grant; (2) through delegation of policymaking authority by those to whom the power has been expressly granted; or (3) by "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik,* 485 U.S. at 126, 108 S.Ct. at 926 (internal quotation marks omitted); *see also East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992); *Krmencik v. Town of Plattekill,* 758 F.Supp. 103, 104–105 (S.D.N.Y.1991).

As to the first and second avenues, The City, through Section 814 of the New York City Charter, has placed authority with the heads of agencies to establish "measures and programs to ensure a fair and effective affirmative employment plan to provide equal employment opportunity for minority group members." HHC, in turn, has vested this power in the Board of Directors, which has established a specific policy of equal opportunity employment. It is apparent from the actions of Mr. Brodsky and Ms. Galan, that hiring decisions have been delegated by the Board to mid-level employees within individual HHC hospitals. The power to make hiring decisions, however, does not in itself give rise to potential Section 1983 liability. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the acts of the municipality." *St. Louis v. Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926 (mid-level supervisor who retaliates against an employee in violation of City Charter is not setting city policy so as to give rise to Section 1983 liability); *see also Carrero v. New York City Housing Authority,* 890 F.2d at 577 (project superintendent's discretion in training and evaluation did not constitute policymaking authority of the Housing Authority). Nor is there any evidence from the pleadings or elsewhere that the employment decision at issue here was reviewed by a person with the authority to make policy. There is no indication in plaintiff's submissions that any person within HHC reviewed and approved of the actions of Mr. Brodsky or Ms. Galan in choosing Mr. Arroyo over the plaintiff. Finally, as for the third method of reaching the municipality, plaintiff has not alleged that the conduct of Mr. Brodsky and Ms. Galan is part of a course of conduct that it "so permanent and well settled as to constitute a custom or usage with the force of law." Therefore, I find as a matter of law that actions taken by Mr. Brodsky and Ms. Galan, even if they were discriminatory, were not a result of an official policy of The City, HHC or Bronx Hospital. Accordingly, plaintiff's claim under 42 U.S.C. § 1983 is dismissed with prejudice.

## 42 U.S.C. SECTION 1981

Plaintiff's second civil rights claim is based on Section 1981 of Title 42, United States Code. An analysis of plaintiff's Section 1981 claim leads to the same result as the analysis of his Section 1983 claim—that plaintiff has failed to plead a valid cause of action against any of the defendants. Section 1981(a) states that:

> All persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts ... as is enjoyed by all white citizens....

491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), adopted the *Praprotnik* framework, and expressly held that the determination of whether the individual actors held policymaking authority is a question of law for the judge to decide. *Id.* 491 U.S. at 737, 109 S.Ct. at 2723–24.

42 U.S.C. § 1981(a). Section 1981(c) provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law." *Id.* § 1981(c) (as amended by the Civil Rights Act of 1991). As with Section 1983, there are two separate issues in finding liability under Section 1981: first, whether there has been a substantive violation of plaintiff's right to make contracts based on his race, and second, whether the named defendants can be held liable for that violation.

■ A Section 1981 claim based on alleged employment discrimination is evaluated in the same manner as a Title VII claim. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) (overturned in part by the Civil Rights Act of 1991, which expanded Section 1981 to cover discriminatory actions that occur after a person is hired). To the extent that plaintiff has stated a valid cause of action under Title VII, he has sufficiently alleged a violation of the substantive portion of Section 1981.

■ The more difficult issue in this case, however, is whether the named defendants can be held liable for the actions of the individual employees. Although the Supreme Court addressed this issue in *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598, the Civil Rights Act of 1991 has cast doubt onto the validity of the holding in that case. In *Jett,* the Supreme Court held that Section 1981 as originally enacted in 1866 did not

create original federal jurisdiction which could support a federal damages remedy against state actors. *Id.* at 721, 109 S.Ct. at 2715. With the passage five years later in 1871 of what we now know as Section 1983, a statute that created liability for any person acting under color of state law who was responsible for a deprivation of constitutional rights, and the later expansion of Section 1983 to provide protection against a deprivation of rights established by federal law, however, the remedial provisions of Section 1983 became available for violations of Section 1981. *Id.* at 731, 109 S.Ct. at 2720–21. In effect, under *Jett* Section 1981 was merely one "law" that could give rise to a Section 1983 claim. The Civil Rights Act of 1991, however, added Section 1981(c), which expressly provided recovery for violations of Section 1981(a) "under color of state law." In evaluating plaintiff's Section 1981 claim, it is necessary to determine what if any change this clause has on the potential liability of municipalities for the conduct of their employees.[7]

In *Jett,* the Supreme Court conducted a thorough review of the legislative history of Section 1981, which was originally enacted as Section 1 of the Civil Rights Act of 1866,[8] and the relationship between Section 1981 and Section 1983, which was enacted as Section 1 of the Civil Rights Act of 1871. *See Jett,* 491 U.S. at 713–31, 109 S.Ct. at 2711–21. In the context of this review, the Supreme Court found that Section 1981 did not, and possibly could not within constitutional bounds, im-

---

7. There are only four reported cases that address the implications of Section 1981(c) on the holdings in *Jett.* Three of those cases simply observe that Section 1981(c) extended the reach of Section 1981 to state action, thereby overruling *Jett.* *See Morris v. State of Kansas Department of Revenue,* 849 F.Supp. 1421, 1426 (D.Kan.1994); *Arnett v. Davis County School District,* No. 92–C–988W, 1993 WL 434053, at *5 n. 8 (D.Utah Apr. 5, 1993); *Ford v. City of Rockford,* No. 88–C–20323, 1992 WL 309603 (N.D.Ill. Oct. 15, 1992). The fourth, *Gallardo v. Board of County Commissioners,* 857 F.Supp. 783 (D.Kan.1994), found that Section 1981(c) overrules *Jett* in so far as *Jett* made Section 1983 the exclusive means of reaching municipalities, but then determined that "when [Congress] added to § 1981 discrimination 'under color of State law,' language borrowed from § 1983, Congress presumably in-

tended to borrow also the rules of municipal liability under § 1983." *Id.* at 786–87.

8. *See* Cong.Globe, 39th Cong., 1st Sess., 129 (1866). Section 2 of the Act, currently codified at 18 U.S.C. § 242, created criminal liability for violations of Section 1. There was, however, no comparable civil liability provision in the 1866 Act. The complete history of the changes to Section 1981 is discussed more fully in *Runyon v. McCrary,* 427 U.S. 160, 168 n. 8, 96 S.Ct. 2586, 2593 n. 8, 49 L.Ed.2d 415 (1976). As discussed in *Jett,* Section 1 of the Civil Rights Act of 1871, now 42 U.S.C. § 1983, was believed by its enactors to create a civil counterpart to the criminal liability imposed by Section 2 of the 1866 Act. *See Jett,* 491 U.S. at 723–24, 109 S.Ct. at 2716–17.

pose vicarious liability on municipalities for actions of their employees. *See Jett,* 491 U.S. at 721, 729, 109 S.Ct. at 2715, 2719–20; *see also Monell,* 436 U.S. at 691–94, 98 S.Ct. at 2036–38 (discussing the constitutional and historical limitations on creating vicarious liability under Section 1983).

In enacting the Civil Rights Act of 1991, Congress gave little discussion to subsection (c) of Section 1981. The focus of Congress' attention was on subsection (b), which overturned a portion of the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132. *See* H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 90–93 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 628–31 (majority views); *id.* at 141, *reprinted in* 1991 U.S.C.C.A.N. at 670 (minority views); 137 Cong.Rec. S15472–01, S15473 (daily ed. Oct. 30, 1991) (section-by-section analysis by Senate sponsors). In *Patterson,* the Supreme Court held that Section 1981 applied only to the formation of contracts, and not to discriminatory actions that occur after formation. *See Patterson,* 491 U.S. at 178–82, 109 S.Ct. at 2373–76. The legislative history of the Act mentions subsection (c) only briefly, and states that subsection (c) was added to reaffirm *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), which held that Section 1981 applied to nongovernmental entities. *See* H.R.Rep. No. 40(I) at 92, 141, *reprinted in* 1991 U.S.C.C.A.N. at 630, 670; 137 Cong.Rec. at S15473, S15483. At no time in either the official summaries or in floor debate surrounding the enactment of subsection (c) did any congressperson mention *Jett* or the scope of municipal liability under Section 1981.

To determine the effect of the addition of subsection (c) to Section 1981, it is instructive to review the linguistic basis through which the Supreme Court determined the scope of municipal liability under Section 1983. Section 1983 provides that:

> *[e]very person who,* under the color of any statute, ordinance, regulation, custom, or usage of any State, ... *subjects or cause to be subjected,* any person ... to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983 (emphasis added). Although there were minor differences in the language of the act as originally passed, as noted by the Supreme Court in *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036, the language that gave rise to municipal liability was not the phrase "under color of state law." This language merely provides for the liability of *individuals* who take action under color of state law. *See Jett,* 491 U.S. at 719–21, 109 S.Ct. at 2714–15 (discussing scope of liability based on the language "under color of any law" in Section 2 of the 1866 Act). Rather, the Supreme Court, after reviewing the legislative history and pre–1861 case law, determined that through the use of the word "persons" Congress intended the statute to include municipalities. *Monell,* 436 U.S. at 683–89, 98 S.Ct. at 2032–35. The Court then determined, based on the words "cause to be subjected," that Congress did not intend for this liability to be vicarious, but instead intended municipal liability to arise only when municipal policies or customs "caused" the injury. *Id.* at 691–92, 98 S.Ct. at 2036–37. Section 1981(c) includes neither the word "persons," the language "caused to be subjected," nor any other language similar to Section 1983 that might extend "under color of law" beyond the individual actors.

With the addition in 1991 of subsection (c) to Section 1981, therefore, Congress may have undercut *Jett*'s analysis that Section 1981 does not create federal jurisdiction for a federal damage action against a state actor, but there is nothing in the language of subsection (c) or its legislative history to disturb *Jett* s holdings that (1) there is no vicarious liability for municipalities under Section 1981, and (2) municipal liability for public officials' violations of Section 1981 must be found under Section 1983 using the *Monell* analysis. The *Jett* Court's analysis of the congressional debate that produced the 1866 version of Section 1981 applies with equal force to the debate that produced the 1991 version of the statute:

> [T]he complete silence on this score in the face of a constitutional background known to those who enacted the ... Act militates

against imputing to Congress an intent to silently impose vicarious liability on municipalities....

*Jett,* 491 U.S. at 729, 109 S.Ct. at 2719–20.

Consequently, based on the clear holdings in *Monell* and *Jett,* both of which preclude imposing vicarious liability on municipalities, and the limited holding in *Monell,* which found municipal liability solely on the basis of language in Section 1983 that is not present in the amendment to Section 1981, I find that *Jett* continues to state accurately the law under which municipalities may be held liable for Section 1981 violations by their employees or agents.[9] Therefore, to assert a Section 1981 claim against municipal entities, as plaintiff has done in this case, plaintiff must allege a violation of Section 1983 and meet the requirements of *Monell.* Because, as discussed above, plaintiff has failed to assert a violation of Section 1983, his Section 1981 claim is dismissed with prejudice.

## 42 U.S.C. SECTION 1985

■ Plaintiff's final cause of action is based on Section 1985(3) of Title 42, United States Code. Section 1985(3) provides that:

> If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or depravation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985 creates no substantive rights, but merely provides a remedy for conspiracies to violate a person's right to equal protection of the laws. *See United Brothers of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358–59, 77 L.Ed.2d 1049 (1983); *Great American Feder-*

*al Savings and Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

■ To assert a claim under Section 1985(3), plaintiff must allege that the defendants have, with racial or other class-based discriminatory animus, conspired to deprive him of a constitutional or other federal right. *See Spencer v. Casavilla,* 903 F.2d 171, 175 (2d Cir.1990). The only mention of a conspiracy in the entire complaint states that "[d]efendant's [sic] officials, Mr. Paul Brodsky and Ms. Rosalie Galan conspire[d] in failing to hire plaintiff and chose a less qualified candidate." Reading plaintiff's complaint liberally, as this Court must, it is possible that plaintiff is alleging that the officials conspired to violate those substantive laws on which plaintiff has based his claims: Title VII, the Fourteenth Amendment, and Section 1981.[10]

Even assuming that plaintiff has alleged conduct sufficient to provide a basis for a claim under Section 1985(3), this provision does not reach the conspiracy asserted in plaintiff's complaint. In the Second Circuit a party cannot assert a Section 1985 claim when (i) all of the alleged conspirators work for the same entity, and (ii) the conspirators were acting within the scope of their employment. *See Hermann v. Moore,* 576 F.2d 453, 459 (2d Cir.) (Section 1985 does not reach alleged conspiracy among law school, trustee, and faculty members), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978); *Girard v. 94th Street and Fifth Avenue Corp.,* 530 F.2d 66, 70 (2d Cir.) (Section 1985 does not reach alleged conspiracy among corporation and its board of directors), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Philippeaux v. Fashion Institute of Technology,* No. 93 Civ. 4438 (MBM), 1994 WL 263447, *2 (S.D.N.Y. June 10, 1994) (Section 1985 does not reach alleged

9. This holding is strengthened by Congress' failure to make any reference to *Jett, Monell* or the issue of municipal liability in adding subsection (c). In a statute that was passed expressly to overturn or modify a number of recent Supreme Court decisions, including decisions involving Section 1981, it would be startling for this Court to find that an amendment intended to reaffirm a Supreme Court decision (*Runyon*) had in fact overturned another (*Jett*) and undermined the

carefully balanced holding of *Monell,* which has formed the bedrock of municipal liability.

10. The Supreme Court has previously held that a conspiracy to violate Title VII cannot form the basis of a Section 1985(3) claim. *See Great American Federal Savings and Loan v. Novotny,* 442 U.S. at 378, 99 S.Ct. at 2352.

conspiracy among employees of FIT—action brought by this same plaintiff).

 Moreover, the named defendants, as municipal entities, can only be held liable for a violation of Section 1985(3) if there was a governmental policy or custom linked to the discriminatory treatment alleged by plaintiff. *Owens v. Hass,* 601 F.2d 1242, 1247 (2d Cir.), *cert. denied sub nom. County of Nassau v. Owens,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Carnegie v. Miller,* 811 F.Supp. 907, 913–14 (S.D.N.Y.1993). As discussed above in connection with Section 1983, the plaintiff has failed to allege facts that would support a finding of liability for these governmental bodies under the standards set out in *Monell v. Department of Social Services of the City of New York,* 436 U.S. at 694, 98 S.Ct. at 2037–38, and *City of St. Louis v. Praprotnik,* 485 U.S. at 123, 108 S.Ct. at 924.

Because plaintiff has failed to allege that the defendants engaged in a conspiracy, has failed to allege that the conspiracy was undertaken by persons outside of a single entity, and has failed to meet the burdens of *Monell,* his claim pursuant to 42 U.S.C. § 1985 is dismissed with prejudice.

### CONCLUSION

Plaintiff's motion for summary judgment is denied in full. Defendants' motion to dismiss is granted in part, and plaintiff's claims based on the ADEA, the Veterans' Preference Act of 1944, New York Civil Service Law Section 85, and Sections 1981, 1983, and 1985 of Title 42, United States Code, are dismissed with prejudice.[11] Plaintiff may proceed on his Title VII claim against all defendants.

SO ORDERED.

---

11. Normally the Court would dismiss plaintiff's Section 1981, 1983 and 1985(3) claims without prejudice and grant plaintiff leave to amend the complaint within a time certain. In this case, however, plaintiff filed an amended complaint after the defendants served their motion to dismiss. Because even having received defendants' motion to dismiss, which set forth the deficiencies in plaintiff's claims, plaintiff still fails to state a cause of action under Sections 1981, 1983 and 1985(3), the Court will not grant plaintiff leave to file a second-amended complaint.