**Emily KRMENCIK, Individually and as Executrix of the Estate of Jaroslav Krmencik, Plaintiffs,**

v.

**TOWN OF PLATTEKILL, James Fehr, as the Town of Plattekill Superintendent of Highways, Herman Haug, and Tobias Haug, Defendants.**

No. 83–CV–638.

United States District Court, N.D. New York.

March 4, 1991.

David J. Clegg, Kingston, N.Y., for plaintiffs.

O'Connell & Aronowitz, P.C., Albany, N.Y., for defendants; Salvatore D. Ferlazzo, of counsel.

MEMORANDUM–DECISION
AND ORDER

MUNSON, Senior District Judge.

Presently before the court is plaintiff's claim pursuant to 42 U.S.C. § 1983 that she and her deceased husband were deprived of due process when defendant James Fehr, as Superintendent of Highways, allegedly ordered the road crew of defendant Town of Plattekill to widen a road bordering the Krmencik's property by taking a strip of their property approximately 8 to 12 feet wide and 275 feet long without their knowledge or consent. Plaintiff asserts that they were deprived of property without due process of law as a direct result of the actions of defendants.

This claim is the culmination of a property line dispute between plaintiff and defendants which has been raging since April of 1982. Numerous incidents occurred between the Krmenciks and the owners of the property on the opposite side of Huckleberry Turnpike, defendants Herman and Tobias Haug, before defendant Fehr directed the town road crew to excavate in July. There is disagreement on what was actually done to the road. Plaintiff states that it was widened by infringing upon the Krmencik property line, while defendant Fehr contends that the existing right of way was merely graded and resurfaced. After defendants completed the road work in August of 1982, plaintiff filed a comprehensive complaint in May of 1983. Defendants moved for summary judgment in March of 1989. On August 25, 1989, the court granted summary dismissal on the first, second, and fourth causes of action. As to the third cause of action, the court granted summary judgment only insofar as it presented a takings claim. The portion of the third cause of action dealing with deprivation of due process required additional information on the issue of defen-

dant Fehr's decisionmaking authority, and thus summary judgment was denied as to that portion. As the potential due process claim provided a basis for subject matter jurisdiction, the court retained jurisdiction over the pendent state law claims as well.

The issue to be determined with respect to the due process cause of action was whether defendant Fehr, as Superintendent of Highways, had final decisionmaking authority such that his actions constituted established municipal policy. The court stated that such a finding "would suffice to hold the Town amenable to a due process claim under § 1983." Memorandum–Decision at 8. To assist in this determination the court directed the parties to brief the specific issue of Fehr's authority, after which a hearing would be held. The hearing took place on October 31, 1990 in Utica, New York. For the reasons stated below, the court concludes that defendant Fehr did not have final policymaking authority regarding road expansion.

*Discussion*

The preeminent case on municipal liability under 42 U.S.C. § 1983 is *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Supreme Court ruled that the § 1983 liability of a local governing body is limited to deprivations of federally protected rights caused by a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2036. This principle encompasses any action taken pursuant to municipal policy, including "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. at 2036.

■ Subsequent cases have examined the intricacies of municipal liability under § 1983. In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (plurality opinion), six Justices for the Court agreed that even a single decision by municipal policymakers in the context of a unique situation can constitute the type of official policy which triggers municipal liability under the *Monell* principle. Qualifying the scope of this determination Justice Brennan, joined by Justices White, Marshall, and Blackmun, stated:

> [W]e hasten to emphasize that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policy-making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.... We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Id.* 475 U.S. at 481–84, 106 S.Ct. at 1299–1300.

To determine whether an individual official has such final authority to establish municipal policy, the Supreme Court directs courts to turn to state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 124, 99 L.Ed.2d 107 (1988) (plurality opinion). Justice O'Connor wrote for the plurality that "state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125, 108 S.Ct. at 924–25. In situations where a policymaker is not clearly identified, the plurality outlined two principles designed to assist a court in drawing the line between an act which is a "mere exercise of discretion by an employee" and an act which is taken pursuant to an actual delegation of policymaking authority to that employee. *Id.* at 126, 108 S.Ct. at 925. First, when a discretionary action is taken pursuant to a policy "so permanent and well-settled as to constitute

a 'custom or usage' with the force of law," the municipality can be held liable under § 1983 regardless of whose action is at issue. *Id.* at 127, 108 S.Ct. at 926 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970)). The second principle provides:

> When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id.* (emphasis in original); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) ("only the conduct of those officials whose decisions constrain the discretion of subordinates constitutes the acts of the municipality").

In *Praprotnik*, the complainant had risen to a mid-level managerial position for the city's Community Development Agency ("CDA") before being transferred to a largely clerical job with another city agency. His complaint asserted that the transfer was directed by his superiors at CDA in retaliation for an incident which occurred two years earlier where he won an appeal of their decision to suspend him for an agency rule violation. *Praprotnik*, 485 U.S. at 114–15, 108 S.Ct. at 919–20. Complainant named the city and the individual employees responsible for the transfer and eventual lay-off as defendants. When it reached the Supreme Court, the case hinged upon identification of the final policymaking authority on city personnel decisions. Complainant maintained that his CDA supervisors possessed such authority and that their actions against him were attributable to the city; therefore, the city could be held liable under § 1983. The Court pointed out, however, that the city could not be held liable unless complainant proved the existence of an unconstitutional municipal policy. *Id.* at 128, 108 S.Ct. at 926. Complainant never alleged that the municipality had pursued an unconstitutional policy of retaliation or that any other individual had suffered a similar injury as a result of the actions of defendants. Moreover, he failed to demonstrate that the municipal policymakers had delegated their final personnel policy authority to the individual employees whose conduct directly caused his injury. *Id.* at 128–30, 108 S.Ct. at 926–27. The fact that the policymakers had delegated review authority of personnel grievances to an independent commission which chose not to investigate the basis of the CDA supervisors' decision to transfer complainant despite his requests for review does not amount to an official ratification of the alleged policy of retaliation which complainant claims motivated the CDA supervisors to transfer him. The Court determined that "[s]imply going along with" a discretionary decision made by supervising employees does not mean the commission delegated to them the authority to make policy, especially where, as here, the decision is based on some unstated rationale. *Id.* at 130, 108 S.Ct. at 927. Therefore, the Court reversed the Eighth Circuit's finding that the supervisor-decisionmakers were final policymakers on personnel transfers, and remanded for further proceedings pursuant to the plurality's opinion.

In a concurring opinion Justice Brennan, joined by Justices Marshall and Blackmun, took issue with the narrowness of the plurality's theory of when a decision becomes final. If the plurality's theory was applied, Justice Brennan wrote that "even where an official wields policymaking authority with respect to a challenged decision, the city would not be liable for that official's policy decision unless *reviewing* officials affirmatively approved both the 'decision and the basis for it.'" *Praprotnik*, 485 U.S. at 145, 108 S.Ct. at 935 (Brennan, J., concurring) (emphasis in original). By never invoking their review authority, policymakers could insulate the municipality from liability for all such unreviewed decisions. Jus-

tice Brennan stated that the test should be whether "the contested decision is made in an area over which the official or legislative body *could* establish a final policy capable of governing future municipal conduct," rather than whether such a policy actually *was* established as the plurality required. *Id.* at 140, 108 S.Ct. at 932–33 (emphasis in original). If state or municipal law indicated that the decisionmaker *could* make policy in that area, it would be "both fair and consistent with the purposes of § 1983 to treat the decision as that of the municipality itself, and to hold it liable for the resulting constitutional deprivation." *Id.* Justice Brennan concluded on the record before the Court that the supervisor making the transfer decision "at most ... had the authority to determine how best to *effectuate* a policy announced by his superiors, rather than the power to *establish* that policy." *Id.* at 141, 108 S.Ct. at 933 (emphasis in original). Hence, it was the supervisor's abuse of the discretion entrusted to him by policymakers rather than any official or final policy which caused the alleged infringement of a constitutionally protected right; such an abuse of discretion does not trigger municipal liability under § 1983. *Id.* at 137, 108 S.Ct. at 931; *see id.* at 141–42, 144–46, 108 S.Ct. at 933–34, 934–36.

█ Applying either construction to the case at bar, the court concludes that defendant Fehr did not have final policymaking authority regarding the alleged taking of plaintiff's property to expand Huckleberry Turnpike. The *Praprotnik* plurality's approach, reiterated by a virtually identical plurality in the context of *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (plurality opinion), calls for this court to identify those officials with final policymaking authority for the municipality on the issue of the road expansion which caused plaintiff's alleged deprivation. Turning to the state highway law, it is undisputed that defendant Fehr as town superintendent of highways was responsible for the care and superintendence of town highways, including repair, inspection, description, removal of obstructions, and employment of road crews to assist with maintenance and repair. N.Y.Highway Law § 140 (McKinney 1979 & Supp. 1991); *see also* N.Y.Town Law § 32(1) (McKinney 1987 & Supp. 1991). Notably absent from this list of relevant responsibilities is the power of eminent domain necessary to engage in road expansion. Such power is vested in the Town Board by N.Y.Town Law § 64(2), which provides:

> [The Town Board] [m]ay acquire ... by acquisition in the manner provided by the eminent domain procedure law, any lands or rights therein, either within or outside the town boundaries, required for any public purpose....

Hence, defendant Fehr had no statutory authority to take a strip of plaintiff's property to expand Huckleberry Turnpike. Moreover, Supervisor for the Town of Plattekill, Pearl Morse, who at the time of the action in question was a member of the Town Board, testified during the hearing that to her knowledge the Town Board had never delegated its power of eminent domain to defendant Fehr. She acknowledged that defendant Fehr had total discretion within the constraints of the Town-supplied budget regarding what highway maintenance and repair projects to undertake, and that he never discussed highway expansion projects with the Board. Nevertheless, Supervisor Morse unequivocally stated that the Superintendent of Highways did not have the authority to take by eminent domain. The Town Board never ratified defendant Fehr's alleged decision to take a strip of plaintiff's property and, in fact, the first time the Board became aware that defendant Fehr may have exceeded his authority was when plaintiff commenced this lawsuit.

Defendant Fehr testified to three ways in which private property could be obtained for a public purpose: dedication as a gift, acquisition through purchase or lease, and condemnation. If a highway project required additional land not within the Town's control, his first step was to ask for the private landowner's consent. If denied, he was to request the Town Attorney to review the matter. Upon approval by the

Town Attorney, the highway project would commence only after an eminent domain proceeding had occurred. In the single instance under Fehr's tenure as Superintendent when a road had been expanded, the private landowner consented to the expansion. While defendant Fehr admitted that he was required to go through the Town Board to obtain private property for any public highway project, he did not go to the Board regarding the work to be done on Huckleberry Turnpike in 1982. He stated that the road was scraped, chipped, and oiled but that the road crew did not go beyond the existing right of way, which included the 16 foot travel surface, shoulder, and ditch. Some of the scrapings and dirt may have infringed upon plaintiff's land without her consent, but the actual road surface did not. Defendant Fehr further testified that he never directed the roadcrew to take from the Krmenciks to give to the Haugs as plaintiff seems to believe. The actions he took were within his official capacity as the Town Superintendent of Highways.

Without resolving the issue of whether a taking actually occurred, it is clear that defendant Fehr was not authorized by statute or delegation from the Town Board to take by eminent domain. It is also evident that no custom existed whereby the Superintendent of Highways could exercise the power of eminent domain to expand a town road. Nor did the Town Board ratify defendant Fehr's action in this instance, which would have served to establish it as official policy. Absent authorization, custom, or ratification, the court must conclude that the Board retained final policy-making authority with respect to the taking of private lands for public highway expansion. If a taking occurred in this instance, then, it must be classified as an unauthorized abuse of the discretion entrusted to defendant Fehr by the Town Board to maintain and repair town roads pursuant to Highway Law § 140. When an alleged infringement of a constitutionally protected right is traced to an abuse of discretion by a municipal employee, no municipal liability exists under § 1983. *Praprotnik*, 485 U.S. at 128, 130, 108 S.Ct. at 926, 927; *see also id.* at 137, 108 S.Ct. at 931 (Brennan, J., concurring). Therefore, the defendant Town cannot be held liable under the guise of § 1983 for plaintiff's alleged deprivation of due process as a result of defendant Fehr's actions in 1982.

Accordingly, defendants' motion for summary dismissal of the remaining portion of the third cause of action is hereby granted. As this § 1983 claim was the only federal claim remaining in plaintiff's complaint, and there is no diversity of citizenship between the parties, the court's dismissal also acts to preclude it from exercising jurisdiction over plaintiff's pendent state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Consequently, the entire action must be dismissed. The clerk of the court is directed to enter summary judgment in favor of defendants and dismiss this action in its entirety.

It is So Ordered.