Ray O'NEAL, Plaintiff,

v.

COUNTY OF NASSAU, Defendant.

No. CV–94–2535 (ETB).

United States District Court,
E.D. New York.

Jan. 16, 1997.

Order Denying New Trial. March 14, 1997.

Order Denying Transcript of
Conference Proceedings March 31, 1997.

Owen B. Walsh, Nassau County Attorney, Mineola, NY by Frank M. Scalera, Deputy County Attorney, for Defendant.

### MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

The plaintiff *pro se,* Ray O'Neal, brings this civil rights action against the County of Nassau ("County"), pursuant to 42 U.S.C. §§ 1983, 1985, and 28 U.S.C. § 1343, seeking damages resulting from conspiracy to interfere with his civil rights.[1] Plaintiff alleges that the County of Nassau and the Nassau County Department of Social Services ("NCDSS") caused him physical and mental abuse for which he seeks money damages in the amount of "$1 trillion" dollars.

Mr. O'Neal alleges in his complaint: (1) that Nassau County officials implanted voodoo in his mind; (2) that County data entry supervisors, Lillian Kufs and Dorris Casseus slapped his hands down on a computer keyboard causing him to suffer cramps and chronic hand pain; (3) that in September 1992, Helen Jackson, another supervisor, stabbed him in the back with a ballpoint pen while he was sitting at his computer terminal; and (4) that in February 1994, "Tom Gulotta," an employee of Nassau County, denied Mr. O'Neal entry into NCDSS and then attacked the plaintiff's arm after a security guard told Mr. Gulotta that the plaintiff was an NCDSS employee.

During the trial, the plaintiff testified that his identification of Mr. Gulotta, the County Executive of Nassau County, as the "employee" who struck him in February 1994, was a result of hallucinations he experienced when he drafted the *pro se* complaint in May 1994. The plaintiff stated at trial that Mr. Gulotta had not prevented him from entering NCDSS and had not physically attacked him, but rather, that it was another employee of Nassau County, whom he was unable to identify.

The parties consented to a trial before me, pursuant to 28 U.S.C. § 636(c). This opinion and order constitutes my findings of fact and

Ray O'Neal, Hempstead, NY, pro se.

1. The plaintiff has commenced a separate federal civil action against the County of Nassau, CV– 95–3108, challenging the lawfulness of the plaintiff's termination from NCDSS in May 1994.

conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.

### THE EVIDENCE AT TRIAL

The complaint alleges that County officials "implanted plaintiff's mind with voodoo"[2] and intentionally inflicted emotional distress upon him by physically attacking and verbally harassing him. *Defendant's Exh. B;* (Tr. 22–23, 45).

Mr. O'Neal testified that in January 1992, Supervisor Lillian Kufs physically assaulted him while he was working at his computer terminal (Tr. 16, 49). Plaintiff testified that Ms. Kufs' alleged misconduct was in retaliation for his complaining to Joan Campbell of the personnel department about her smoking cigarettes in the workplace (Tr. 49). Mr. O'Neal testified that prior to the attack, Supervisor Kufs expressed her disappointment that he had complained to the personnel department (Tr. 49). According to plaintiff, Ms. Kufs then "snuck up on me and simultaneously attacked both of my hands by banging on them, slapping them on the keyboard" (Tr. 49). The court does not credit plaintiff's testimony with respect to this assault.

Mr. O'Neal testified that he complained to Joan Campbell and to Tom Leonard, the systems manager for NCDSS, about the first assault, Plaintiff stated that he did not suffer any physical injuries from the incident (Tr. 20, 49). Plaintiff testified that he visited Dr. Linden, a hand surgeon, for the cramping he had been experiencing in his hands after the incident (Tr. 51–54). According to the plaintiff, Dr. Linden advised him that the cramping was "probably from the implantation of the voodoo" by the county supervisors (Tr. 54) and recommended that he seek therapy (Tr. 51–54).

Mr. O'Neal testified that NCDSS supervisors Helen Jackson, Doris Casseus, Lillian Kufs, and Tom Leonard, were among the more than twenty-five County officials who conspired to drive him insane by implanting voodoo in his head (Tr. 41–42, 59). No additional evidence regarding the alleged conspiracy was introduced at trial. The plaintiff testified that due to therapy and treatment, he could not "recall the implantment of voodoo" (Tr. 42–43). Mr. O'Neal testified that following the incident with Lilian Kufs in January 1992,[3] the NCDSS supervisors within his area repeatedly complained, without cause, about his work performance and behavior (Tr. 56, 20, 125–126, 132). The court does not credit this testimony.

The decline in the plaintiff's work performance was documented in Mr. O'Neal's Personnel Progress Report, dated May 18, 1992. *Defendant's Exh. K.* Supervisor Lisa Renee Palacios stated in her evaluation that the plaintiff made "frequent errors" and that he needed to improve his attitude and to accept his role as someone subject to supervision. *Id.* Mr. O'Neal acknowledged that he was aware of his supervisors' concerns over his performance (Tr. 46–48). He stated that any decline in his work performance was caused by the mistreatment he received from his supervisors (56).

The plaintiff stated that a supervisor attacked him for the second time in September 1992. He stated that Helen Jackson, a NCDSS employee of twenty-six years, who had served as a keyboard supervisor since 1988 (Tr. 174–75), stabbed him in the back with a ballpoint pen while he was sitting at his computer terminal (Tr. 57); *Plaintiff's Exh. 7.* Mr. O'Neal testified that he did not require any medical attention nor did he report any physical injuries following the alleged incident, but he claimed that he was

**2.** On June 16, 1994, the New York State Department of Labor informed Mr. O'Neal that he was ineligible for unemployment insurance benefits because he had "failed to produce medical evidence that you followed your employer's request that you undergo counseling." *Plaintiff's Exh. 16;* (36).

**3.** Mr. O'Neal submitted into evidence a letter, dated December 1, 1995, which he stated was his response to a memorandum citing him for misconduct following the January 1992 incident

with Lillian Kufs. *Plaintiff's Exh. 6.* The letter states:

> Lillian Kufs was angry at Ray O'Neal for reporting her for illegally smoking cigarettes in the workplace. She began to get violent and attack[ed] me with both of her hands simultaneously knocking both of my hands on the keyboard. Ray O'Neal suffered mental anguish.

*Id.*

traumatized by the incident (Tr. 57). The court does not credit Mr. O'Neal's testimony concerning the second attack.

Ms. Jackson denied plaintiff's allegations (Tr. 178). She testified to numerous instances of inferior work performance and disruptive behavior exhibited by the plaintiff under her supervision. Describing plaintiff's work performance, Ms. Jackson testified that he "used to key [data] very fast, but he was not careful.... He made a lot of errors. His work was not neat." (Tr. 181). She added that Mr. O'Neal was difficult to supervise because he was uncooperative, was unkempt in his appearance, and had a nasty disposition (Tr. 178–81). The court credits Ms. Jackson's testimony.

Ms. Jackson testified to several incidents of insubordination by plaintiff. She stated that on November 25, 1992, after confronting Mr. O'Neal about exposing his stomach to co-workers while leaning back in his chair (Tr. 184), the plaintiff responded that he was on his break and that his co-workers should look elsewhere (Tr. 184). She testified that in February 1993 she cited Mr. O'Neal for taking an unauthorized leave when he failed to return to work following the lunch hour (Tr. 182). She testified that she also received complaints about Mr. O'Neal's body odor (Tr. 179). The court credits this testimony of Ms. Jackson.

The plaintiff alleges that another supervisor of data entry, Dorris Casseus, attacked him in May 1990 (Tr. 5). According to Mr. O'Neal, Ms. Casseus "slapped both of [his] hands down on [the] computer keyboard as he performed his job description" (Tr. 5). At the time of this incident, Supervisor Casseus was the plaintiff's immediate supervisor (Tr. 159). The plaintiff contends that he verbally complained about all three attacks to Tom Leonard, manager of the NCDSS systems department, and supervisors Joan Campbell and Kim Ferrer (Tr. 21, 108). According to Mr. O'Neal, these individuals "discriminated against [his] complaint of physical abuse by the supervisors" and denied him of he right to file an employee grievance under the current collective bargaining agreement between Nassau County and its civil service employees (Tr. 7); *Plaintiff's Exh. 10*.[4] The court does not credit the testimony of Mr. O'Neal concerning the third attack.

Ms. Casseus denied physically striking or threatening to strike the plaintiff while he was under her supervision at NCDSS (Tr. 160). She testified that the plaintiff was an irresponsible employee who made frequent mistakes (Tr. 167, 170). Like her colleagues, Ms. Casseus also found Mr. O'Neal to be a disruptive influence as well as a difficult employee to supervise. She testified that "he is unapproachable because whenever you do approach him, he jumps up and yells and screams. He is really a violent type person. So many times I refused to even approach him with his errors, because the least thing you are going to get a confrontation" (Tr. 167). The court credits this testimony by Ms. Casseus.

Ms. Casseus further testified that the plaintiff had been suspended for ten days for insubordination around the same time that plaintiff claims he was stabbed with a pen by Ms. Jackson (Tr. 55–56, 164–67). In September 1992, Mr. O'Neal was reassigned to the NCDSS department that performed the computer entry for the distribution of County funds (Tr. 165). Ms. Casseus stated that four or five different supervisors from the income maintenance unit brought to her attention the numerous data entry errors that had been made by Mr. O'Neal. When she confronted the plaintiff, he became agitated

---

4. Mr. O'Neal also communicated his complaints about the alleged attacks directly to the personnel department in writing (Tr. 93–94, 108–09); *Plaintiff's Exh. 7 and 8*.

The plaintiff also asserts that supervisors Leonard and Campbell violated § 23–1.1 of the collective bargaining agreement because they failed to respond to his verbal complaints within five days of making them (Tr. 90); *Plaintiff's Exh. 10*, at § 23–1.1. Section 23–1.1 of the agreement provides:

Step 1. An employee who feels that the employee has been aggrieved may orally present the employee's grievance to the employee's immediate supervisor, not a member of the negotiating unit, who shall carefully consider the matter and, within five (5) days thereafter, make a determination and advise the employee and the Union of the decision.

*Plaintiff's Exh. 10*, at § 23–1.1.

and shouted obscenities at her (Tr. 165). Ms. Casseus' supervisor, Joan Campbell, attempted to calm the plaintiff. She testified that the plaintiff then left the building (Tr. 166) and a few minutes later appeared outside the building banging on her office window. She testified that security was called and Mr. O'Neal ran away (Tr. 166). Ms. Casseus reported the incident, and the plaintiff was suspended (Tr. 166).[5] The court credits this testimony by Ms. Casseus.

Mr. Thomas Leonard, manager of the NCDSS computer systems and computer personnel, testified on behalf of the defendant, Nassau County. Mr. Leonard denied any physical contact with the plaintiff during the two years that Mr. O'Neal was under his supervision (Tr. 128). Thomas Leonard testified that "[b]eginning in early 1992, [plaintiff's] behavior as an employee began to deteriorate. He became a constant discipline problem. His productivity was poor. His discipline was continually brought to my attention. He progressively gave each of his supervisors a very difficult time" (Tr. 132–33). Through Mr. Leonard, the County offered into evidence documentation of the plaintiff's erratic behavior which led to disciplinary actions taken against Mr. O'Neal (Tr. 132–39).[6] In a memorandum dated July 27, 1993, Mr. Leonard recommended to the personnel department that disciplinary action be taken following a July 23, 1993 incident involving supervisor Helen Jackson and the plaintiff. (Tr. 13536); *Defendant's Exh. C.* According to the documents, on July 23, 1993, Helen Jackson approached the plaintiff to correct his inaccurate time record. After making the modification, the plaintiff attempted to falsify the corrected entry. *Defendant's Exh. C.* Four days later, Mr. Leonard observed Mr. O'Neal in the work area carrying an aluminum baseball bat in a

threatening manner while asking "Where's Helen?" *Defendant's Exh. C;* (Tr. 136). Nassau County police officers were called to retrieve the bat from the plaintiff (Tr. 136). The court credits this testimony by Mr. Leonard.

Two months following the latter incident, in September 1993, Mr. Leonard recommended to Robert Sherman, Assistant to the Commissioner for the Department of Social Services, that Mr. O'Neal be disciplined after calling him "a liar" when he attempted to discuss the plaintiff's late return from the lunch break (Tr. 139–41). Mr. Leonard testified that the plaintiff thereafter called the Nassau County Police to complain that Mr. Leonard had attempted to kidnap him (Tr. 140). Following a meeting at the personnel department, and in which the plaintiff and his union representatives were present, the plaintiff was suspended for fifteen days (Tr. 142, 150–51). The court credits this evidence.

The plaintiff introduced evidence that he filed a complaint with the Nassau County District Attorney's Office on September 28, 1993, concerning the alleged attacks by Lillian Kufs, Helen Jackson, and Dorris Casseus (Tr. 63–67); *Plaintiff's Exh. 2.* The filing is not disputed by the County.

Mr. Leonard testified that on December 2, 1993, he issued a third memorandum recommending disciplinary action against Mr. O'Neal. The recommendation was based on several lengthy periods of non-work outside the normal break time. *Plaintiff's Exh. 4;* (Tr. 147–48). The memo states:

> The periods of nonwork included simply sitting and staring, sitting and singing, or sitting and apparently sleeping.

> At approximately 1:15 PM, after observing Mr. O'Neal sprawled in his chair star-

---

5. An arbitrator upheld the plaintiff's suspension. (Tr. 56–57).

6. According to Supervisors Leonard, Jackson, and Casseus, the memoranda offered into evidence do not adequately represent the total number of disciplinary problems attributed to the plaintiff's behavior because the NCDSS does not document all disciplinary incidents involving its employees (Tr. 129–30, 168, 175). Mr. Leonard testified that "the less serious" incidents of im-

proper conduct result in either a verbal reprimand by a supervisor or an informal discussion between the employee and his or her immediate supervisor (Tr. 129). These actions do not appear within the employee's personnel file. If the incident involves a "more serious" matter or the informal meeting does not produce positive results, then "the more formal level of activity with formal meetings and formal memos" would occur. (Tr. 129–30).

ing at the ceiling for several minutes, I requested that he start working. He did not answer or begin working, and after about three minutes, he walked out of the room.

Mr. O'Neal returned to the room and resumed sitting at his data entry terminal at approximately 1:25 PM, but did not begin working. Mr. O'Neal refused to enter data at his terminal, claiming "that his hands hurt from when Doris and Lillian attacked him". *Plaintiff's Exh. 4.*

Plaintiff testified that in February 1994, an unidentified NCDSS employee refused to allow him to enter his work area (Tr. 6). Plaintiff stated that a security guard at the location intervened and instructed the employee that Mr. O'Neal worked within the building. The plaintiff testified that when he reached to grab the door leading into the work area, the unidentified "county employee attacked [him] by throwing his body and weight on the plaintiff's arms and hands to force him to leave the door." (Tr. 6).[7] The court does not credit this testimony.

The plaintiff's conduct in the workplace continued to deteriorate. In March 1994, Mr. Leonard had to instruct the plaintiff on two or three occasions to stop reading the newspaper during working hours (Tr. 152). On each occasion, Mr. Leonard asserted that the plaintiff refused to return to his work.[8] Following consultations with the Commissioner's office and the personnel department, the plaintiff was discharged on May 12, 1994 (Tr. 16–17, 152–53); *Plaintiff's Exh. 1,* at 5, 7.

Mr. O'Neal acknowledged that in May 1994 he began psychiatric counseling with Marie Lippon, M.D. He testified that he was suffering extreme depression, and was hearing voices. He stated that Dr. Lippon prescribed medication (Trilithon) to counteract his hallucinations and mental distress (Tr. 25). The court credits this testimony. The court does not credit plaintiff's testimony that his symptoms were brought on by the trauma of being physically attacked by his supervisors (Tr. 23–24, 28, 44).

### DISCUSSION

■ The plaintiff appears *pro se.* In reviewing the complaint, the court recognizes that a *pro se* complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers" *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and "that a *pro se* litigant should be afforded every reasonable opportunity to demonstrate ... a valid claim" *Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 762 (2d Cir.1990), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991) (quoting *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984)).

### I. Section 1983

■ A civil rights action under "[s]ection 1983 [9] provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." *Eagleston v. Guido,* 41 F.3d 865, 875 (2d Cir.1994), *cert. denied,* 516 U.S. 808, 116 S.Ct. 53, 133 L.Ed.2d 18 (1995). To establish a claim the plaintiff

---

7. On November 21, 1994, the plaintiff filed a second complaint with the Nassau County District Attorney's office. *Plaintiff's Exh. 3.* The nature of the complaint was limited to the actions of the unidentified Nassau County employee who allegedly struck the plaintiff as he attempted to enter NCDSS. *Id.* No testimony was elicited with regard to any prosecutorial action taken.

8. Mr. O'Neal testified that he was not working when approached by Mr. Leonard because he had been waiting for a supervisor from another floor to give him his next data entry assignment (Tr. 103); *Plaintiff's Exh. 5.* However, on cross-examination, Mr. O'Neal conceded that in December 1992, Mr. Leonard was the supervisor who assigned him computer data entry work (Tr. 107).

9. Title 42 U.S.C. § 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

must show (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States.

*Id.* at 875–76 (quoting *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see Rendell–Baker v. Kohn,* 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other ground, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

■ In the instant case, there is no question that supervisors Kufs, Casseus, and Jackson were acting under the color of state law at all times relevant. From 1992 – 1994, Ms. Kufs, Ms. Casseus, and Ms. Jackson were employed by NCDSS[10] and acted in a supervisory capacity (data entry Level I) over the plaintiff, a data entry keyboard operator. *See Philippeaux v. North Central Bronx Hosp.,* 871 F.Supp. 640, 652 (S.D.N.Y. 1994).

## II. Personal Involvement of Supervisors Kufs, Casseus, and Jackson

■ The plaintiff must allege the personal involvement of each defendant in the constitutional deprivations. *Monell v. Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983'") (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.

1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

The Second Circuit has delineated four ways in which a municipal supervisor may be shown to have the requisite degree of "personal responsibility" for municipal liability: (1) direct involvement in the incident itself; (2) failure to remedy a wrong after learning of a constitutional violation; (3) continuing the policy or custom under which the violation occurred; or (4) gross negligence in managing a subordinate whose conduct resulted in the constitutional violation. *Butler v. New York State Correctional Dep't,* 1996 WL 438128, at *2 (S.D.N.Y. Aug.2, 1996) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).

■ Although the plaintiff does not name the individual NCDSS data entry supervisors as party-defendants in the caption or body of the complaint, the court finds that Mr. O'Neal's *pro se* complaint sufficiently alleges their direct, personal involvement in the alleged deprivation of his constitutional rights ("the caption itself is normally not determinative of the identity of the parties," *Nationwide Mutual Ins. Co. v. Kaufman,* 896 F.Supp. 104 (E.D.N.Y.1995). Within the text of the complaint, Mr. O'Neal identifies the three NCDSS supervisors and presents explicit allegations that each struck him in some manner. The complaint states:

> Lillian Kufs (Data entry supervisor) attacked my hands on the data entry terminal by slapping my hands down on the keys. Doris Casseus slapped both of [my] hands down on the keyboard. Doris Casseus is a supervisor [of] data entry. Since the abusive attacks my hands have suffered cramps and chronic pains. The incident happened on May 20, 1993. On Sept. 1992, Helen Jackson, supervisor of data entry used a ballpoint ink pen to jab [me through] the back of my chair.

*Plaintiff's Complaint; Defendant's Exh. B.* The court finds that Mr. O'Neal has sufficiently alleged the supervisors' direct in-

---

**10.** Although NCDSS is a named party defendant, it is not a legal entity subject to suit. *See Solis v. County of Westchester, et al.,* 1995 WL 14072, *1 (S.D.N.Y. Jan.10, 1995) (renaming the "Westchester County Department of Corrections" as

the "County of Westchester" in the caption of the complaint). Since the County of Nassau is also a named party defendant, no substitution is required in the caption.

volvement. *See Williams,* 781 F.2d at 323–24.

### III. Elements of Municipal Liability

 Conduct by a non-policy making municipal employee may serve as a predicate for § 1983 liability where the plaintiff demonstrates that the employee [11] violated his constitutional rights pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell,* 436 U.S. at 690; *City of Oklahoma City, v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 122 (2d Cir.1991); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987).

 A plaintiff bringing a § 1983 claim must show that his constitutional rights were violated as a result of the municipal custom or policy, *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996). He need not demonstrate that the custom or policy was adopted in a municipal rule or regulation. *See Villante v. Department of Corrections of the City of New York,* 786 F.2d 516, 519 (2d Cir.1986); *Sorlucco v. New York City Police Dep't.,* 971 F.2d 864, 870–71 (1992); *Covington v. City of New York,* 916 F.Supp. 282, 288 (S.D.N.Y.1996). A persistent practice that is well-settled, even though not officially recognized, may be sufficient to constitute a custom. *Sorlucco,* 971 F.2d at 870–71.

 Alternatively, a policy or custom "may be inferred from acts or omissions of the municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff." *Villante v. Department of Corrections of New York,* 786 F.2d 516, 519 (2d Cir.1986); *see Dwares,* 985 F.2d at 100 ("The inference that such a policy existed may arise from 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display deliberate indifference to the constitutional rights of those within its jurisdiction' "); *Ricciuti,* 941 F.2d at 123; *Sorlucco,* 971 F.2d at 870–71; *Fiacco,* 783 F.2d at 326, 328 ("[w]hether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police offices had used excessive force"). Lastly, municipal liability may be based upon "municipal supervisors' knowing acquiescence in the unconstitutional behavior of their subordinates." *Villante,* 786 F.2d at 519; *Krulik v. Board of Educ.,* 781 F.2d 15, 23 (2d Cir.1986). A supervisor's knowledge of such conduct "may be inferred from a persistent violation of a statutory duty to inquire about the unconstitutional behavior of their subordinates and a failure to prevent the unconstitutional acts." *Thomas v. New York City,* 814 F.Supp. 1139, 1151 (E.D.N.Y.1993) (citing *Villante,* 786 F.2d at 519).

#### A. No Deprivation a Constitutional Right

The plaintiff must first prove the deprivation of a constitutional right. *Monell,* 436

---

**11.** Whether a particular municipal official has "final policy making authority" is a question of state law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *see Davis v. City of New York,* 1990 WL 165763, at *10 (S.D.N.Y. Oct.22, 1990). In determining whether an individual qualifies as a "policy maker" under state law, the court considers whether such authority was obtained (1) by statute; (2) by delegation from those who had been expressly granted the authority by statute; or (3) by "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis,* 485 U.S. at 123, 126; *see East Coast Novelty Co. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992); *Krmencik v. Town of Plattekill,* 758 F.Supp. 103, 104–05 (S.D.N.Y.1991).

Supervisory employees who "exercise[ ] some discretion in training and evaluating" the agency's workers, without more, are not "policy making officials." *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577 (2d Cir.1989) (project superintendent's discretion in training and evaluation did not constitute policy making authority).

The evidence at trial established that the responsibilities of the data entry supervisors, Lillian Kufs, Doris Casseus, and Helen Jackson, were to supervise the keyboard operators and evaluate data entry procedures in the public assistance division of the Nassau County Department of Social Services (159). There is no evidence suggesting that the data entry supervisors have policy making authority. The court, therefore, finds that the three supervisors identified within the complaint are not "policy making officials." *See Praprotnik v. City of St. Louis,* 879 F.2d 1573, 1575 (8th Cir.1989); *Carrero,* 890 F.2d at 577.

U.S. at 694. § 1983 recovery is not authorized against a municipality "when in fact ... the officer inflicted no constitutional harm." *Ella v. Jackson,* 1996 WL 673819, at *3 (S.D.N.Y. Nov.20, 1996) (quoting *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (*per curiam*)); *Pitchell v. Callan,* 13 F.3d 545, 549 (2d Cir.1994).

In this § 1983 action, plaintiff seeks to recover damages for misconduct which consists of (1) slamming his hands on the computer keyboard; (2) stabbing with a pen in the back; (3) attacking him while entering NCDSS; (4) implanting voodoo in his mind. Mr. O'Neal claims that these acts show a Departmental-wide conspiracy of physical and mental abuse.

### 1. *Failure to Prove the Deprivation of a Constitutional Right*

■ There is no credible evidence of physical attacks by the NCDSS supervisors, or of any conspiracy by county employees to cause the plaintiff physical or mental harm. The plaintiff, who was the sole plaintiff's witness at the trial, testified that he has undergone psychiatric treatment and is taking medication to control his delusional thinking.

The County of Nassau called three witnesses; Thomas Leonard, Doris Casseus, and Helen Jackson, long-term NCDSS supervisory employees, who denied attacking or mentally abusing Mr. O'Neal. The court fully credits the testimony of these witnesses. The supervisors testified that the plaintiff has received favorable performance evaluations prior to September 1992, but that Mr. O'Neal's demeanor and work performance thereafter rapidly deteriorated until his eventual discharge in May 1994. They further testified that Mr. O'Neal was a disruptive employee, and that he was uncooperative, difficult to supervise, and feared by the other employees within the department.

It is clear from the evidence introduced by the County of Nassau that NCDSS supervisors did not physically or mentally harm the plaintiff. The plaintiff is someone who suffers from mental illness who, as a County employee, engaged in bizarre and inappropriate behavior, and suffers from hallucinations. The plaintiff has failed to establish the deprivation of a constitutional right.

### 2. *No Evidence of a Conspiracy to Deprive the Plaintiff of His Constitutional Rights or Privileges*

■ The plaintiff also alleges that data entry supervisors and other employees of the defendant Nassau County conspired to interfere with his civil rights pursuant to 42 U.S.C. § 1985.[12] In order to state a civil rights conspiracy under § 1985, the plaintiff must prove: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of a constitutional right. *See United Brotherhood of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 829–30, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Gray v. Town of Darien,* 927 F.2d 69, 72 (2d Cir. 1991).

■ To succeed on a conspiracy claim against municipal employees, the plaintiff must allege more than conclusory, vague, or general allegations. *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992); *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988). "The Second Circuit has repeatedly held that the plaintiff should provide at least some details of circumstances and effect of the alleged conspiracy." *Dwares,* 985 F.2d at 99–100 (citing 2A *Moore's Federal Practice* ¶ 8.17[6], at 8–109 to 8–110 (2d ed.1992)); *Salahuddin,* 861 F.2d at 43; *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (*per curiam*). "Diffuse and

---

**12.** While plaintiff does not allege a subdivision of § 1985, the court will assume that the plaintiff is relying on subdivision (3), which is the only one which could have any possible application based on the underlying incident (subdivision (1) relates to a conspiracy to prevent a federal officer from performing his duties; subdivision (2) relates to obstruction of justice, e.g. a party, witness or juror in a federal action).

expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer*, 567 F.2d at 553. The complaint here is devoid of any facts to support the conclusory claim.

■ Plaintiff testified that he first became aware of a conspiracy in early 1992 after Supervisor Joan Campbell informed him that he was "not welcome" in NCDSS. He also testified that NCDSS did not prevent his co-workers and colleagues from physically and mentally abusing him. The plaintiff offered no additional evidence in support of his conspiracy claim. The court does not credit this testimony. The plaintiff has failed to establish any of the elements of a § 1985 conspiracy.

Accordingly, I find that the plaintiff failed to establish that NCDSS officials conspired to deprive him of his civil rights.

## CONCLUSION

For the foregoing reasons, the court finds that the plaintiff has failed to establish that the defendant municipality (1) violated of his civil rights pursuant to 42 U.S.C. § 1983 or (2) conspired to interfere with his civil rights pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1985.

The clerk is directed to enter a judgment in favor of the defendant dismissing the complaint.

SO ORDERED.

## *ORDER*

By motion filed with the court on January 30, 1997, the *pro se* plaintiff, Ray O'Neal, requests a new trial pursuant to Rule 59 and to amend the findings of the court, pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, on the ground that he was not represented by an attorney at trial to cross-examine witnesses, "to gather the evidence," and to address issues of law, e.g., "conspiracy law." Affidavit of Ray O'Neal dated January 30, 1997 entitled "Memorandum of Law" in

Support of Motion. The defendant, County of Nassau, has submitted no opposition to the motion.

This is a *pro se* civil rights action which the plaintiff commenced in 1994 against the County of Nassau ("County"), pursuant to 42 U.S.C. §§ 1983, 1985 and 28 U.S.C. § 1343, seeking damages resulting from an alleged conspiracy to interfere with plaintiff's civil rights as an employee in the Nassau County Department of Social Services ("NCDSS").

This case was tried before the undersigned non-jury in July 1996. Pursuant to the Memorandum Opinion and Order, dated January 16, 1997, the court awarded judgment in favor of the County and dismissed the complaint.

The record reflects that the plaintiff's request for appointment of counsel was denied by the undersigned, by order dated January 18, 1997, on the grounds that the plaintiff had failed to meet the applicable criteria for such relief, as set forth in *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986) and *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170 (2d Cir. 1989).

■ The court is obliged to set aside the judgment to prevent the occurrence of an injustice. *See Baasch v. Reyer*, 827 F.Supp. 940, 942–43 (E.D.N.Y.1993); Wright, Kane & Miller, *Federal Civil Practice and Procedure*, § 2805 (2d ed.1986). Normally, requests for a new trial address issues such as the weight of the evidence, the size of a verdict, or newly discovered evidence affecting the verdict. *See Dailey v. Societe Generale*, 108 F.3d 451, 458 (2d Cir.1997); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Civil Practice and Procedure*, at §§ 2805–2810. However, the court clearly is not in anyway limited to such issues, and therefore addresses the issue of denial of the assistance of counsel at trial.[1] *See Thomas v. Bolger*, 1987 WL 26997 (E.D.N.Y. Nov.25, 1987), *aff'd*, 847 F.2d 837 (2d Cir.1988), *cert. denied, Thomas v. United States Postal*

---

1. While the plaintiff's motion is also made pursuant to Rule 52(b), which authorizes a motion to amend the findings made by the court, plaintiff's papers are silent as to any specific findings. Accordingly, the court will assume that the request is to amend all of the findings and to set aside the judgment. The request under Rule 52(b) is denied for the same reasons that a new trial is denied under Rule 59.

*Serv.,* 488 U.S. 844, 109 S.Ct. 118, 102 L.Ed.2d 92 (1988).

 The court has reviewed the prior order, dated January 16, 1997, denying counsel in light of the ensuing proceedings, including the trial. For the reasons set forth therein, the court continues to adhere to that order and finds that the denial of counsel does not entitle the plaintiff to a new trial or any amendment of the judgment. There is no constitutional or statutory right to counsel in a civil case. *Thomas,* 1987 WL 26997, at *1, *aff'd,* 847 F.2d 837 (2d Cir.1988).

The plaintiff's motion is denied.

SO ORDERED.

### *ORDER*

By undated request received by the court on March 24, 1997, the *pro se* plaintiff, Ray Anthony O'Neal, requests "a copy of the conference proceedings dated December 15, 1995 ... and November 9, 1995" on a related case, 95–CV–3108, which involves the same parties.

The reason for the request is "because it will be introduced as evidence at the trial and with his Writ of Mandamus T–10–80 motion form to the 2nd Circuit [C]ourt of [A]ppeals in reference to case CV–94–2535." The plaintiff requests that the transcripts be provided free of charge "since he has been granted the right to proceed *forma [p]auperis* [under] 28 U.S.C. [ § ] 1915."[1]

I conducted a non-jury trial on CV–94–2535 in which the *pro se* plaintiff, a former data entry employee of the Nassau County Department of Social Services ("NCDSS"), sought relief against the defendant, County of Nassau, pursuant to 42 U.S.C. §§ 1983, 1985 and 28 U.S.C. § 1343 for damages resulting from an alleged conspiracy alleged among employees of NCDSS. The plaintiff claimed in the complaint that NCDSS employees had implanted his mind with voodoo, that a NCDSS supervisor had stabbed him in the back with a pen while he was seated in front of his computer terminal, that other supervisors slapped his hands on the computer keyboard, and that the County Executive of Nassau County had attacked him and denied him access to his work place.

The court found the testimony of the plaintiff unworthy of belief at trial and credited the testimony of the witnesses called on behalf of the County. In a Memorandum Opinion and Order dated January 16, 1997, the court directed that judgment be entered dismissing the complaint.

The related case, CV–95–3108, is a pending action wherein the *pro se* plaintiff challenges the lawfulness of his termination by NCDSS which occurred in May 1994. After awarding judgment to Nassau County in CV–94–2535, at the plaintiff's request, I recused myself in CV–95–3108. That case has been re-assigned to Magistrate Judge Michael A. Orenstein.

### *DISCUSSION*

 The request for the transcripts for use for an appeal or "Writ of Mandamus" to the Court of Appeals is denied. The granting of plaintiff's prior request to proceed *in forma pauperis* in the district court does not automatically entitle him to a free copy of all proceedings in the district court for purposes of an appeal. *See McCarthy v. Bronson,* 906

---

1. Section 1915 of Title 28, which governs proceedings *in forma pauperis,* provides, in relevant part:

 (a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor ...
 (B) Upon the filing of an affidavit in accordance with subsection (a) of this section, the court may direct payment by the United States of the expenses of (1) printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court; (2) preparing a transcript of proceedings before a United States Magistrate in any civil or criminal case, if such transcript is required by the district court, in the case of proceedings conducted under section 636(b) of this title or section 3401(b) of title 18, United States Code; and (3) printing the record on appeal if such printing is required by the appellate court, in the case of proceedings conducted pursuant to section 636(c) of this title. Such expenses shall be paid when authorized by the Director of the Administrative Office of the United States Courts.
 28 U.S.C. § 1915.

F.2d 835, 841 (2d Cir.1990); *Crossley v. United States,* 538 F.2d 508, 509 (2d Cir. 1976) ("indigent federal prisoner has no unconditional right ... to obtain at public expense transcripts of the prior judicial proceedings...."); *Niccolai v. Warden, MCC,* 1994 WL 481918 (S.D.N.Y. Sept.2, 1994) (in civil cases, "a party proceeding *in forma pauperis* does not have a Constitutional or statutory right to a free transcript or tape...."); *Linden v. Harper and Row Publishers,* 490 F.Supp. 297, 298 (S.D.N.Y.1980) (citing *Jaffe v. United States,* 246 F.2d 760 (2d Cir.1957)).

#### A. *28 U.S.C. § 1915. In Forma Pauperis*

Granting the *pro se* plaintiff's request to proceed *in forma pauperis* at trial enabled him to file the complaint without payment of any filing fee [28 U.S.C. § 1915(a) ] and also entitled him to the services of the United States Marshal's office for service of the summons and complaint. It also entitles him to proceed on appeal *in forma pauperis.* Rule 24(a) of the Federal Rules of Appellate Procedure. Section 1915 has no other application to the plaintiff's request since the court was not exercising any of the duties outlined in 28 U.S.C. § 636(b) [granting judges the authority to designate the assigned magistrate judge to determine any pretrial matter or to submit proposed findings of fact and recommendations]. *See Harper & Row, Inc.,* 467 F.Supp. at 558.

#### B. *28 U.S.C. § 753(f), Fees for Transcripts*

■ Although not raised by the *pro se* plaintiff, the court also considers the request under 28 U.S.C. § 753(f). That provision states, "Fees for transcripts furnished ... to persons permitted to appeal *in forma pauperis* shall ... be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)." 28 U.S.C. § 753(f). The standard for determining if an appeal presents a substantial question is whether, when judged on an objective basis, the appeal (1) raises a question that is "reasonably debatable" and (2) whether the transcript is necessary to the presentation of the appeal. *Linden v. Harper and Row Inc.,* 467 F.Supp.

556, 557–58 (S.D.N.Y.1979) (citing *Harlem River Consumers Coop., Inc.,v. Associated Grocers of Harlem, Inc.,* 71 F.R.D. 93, 97–98 and n. 7 (S.D.N.Y.1976)).

■ Plaintiff's undated letter request does not specify any grounds for appeal, and does not indicate why the case management conference in the related case is necessary for an appeal. The court notes that the *pro se* plaintiff has been provided with the complete transcript of the two day non-jury trial conducted herein. The plaintiff has failed to meet the standard for establishing his entitlement to a free copy of the requested scheduling conferences. *Harper and Row Inc., supra,* 467 F.Supp. at 557–58; *see McCarthy,* 906 F.2d at 841 (holding that the plaintiff is not entitled to a free transcript where the issues on appeal do not "require an examination of the evidence").

For the foregoing reasons, the plaintiff's motion for case management transcripts in 95–CV–3108, pursuant to 28 U.S.C. §§ 753(f) and 1915, for purposes of appeal in CV–94–2535 is denied. Insofar as plaintiff requests a copy of the conference transcripts for use at trial in CV–95–3108, that application is denied, with leave to renew the application before Magistrate Judge Michael A. Orenstein.

SO ORDERED.